Peter J. **BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**STATE OF INDIANA, Defendant-Appellant (two cases).**

Nos. **74–1707, 74–1708.**

United States Court of Appeals, Seventh Circuit.

Heard Feb. 20, 1975.

Decided June 18, 1975.

Theodore L. Sendak, Atty. Gen., Robert S. Spear, Deputy Atty. Gen., Indianapolis, Ind., for defendant-appellant.

Donald S. Shire, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before SWYGERT and SPRECHER, *Circuit Judges,* and JAMESON, *Senior District Judge.*[1]

SWYGERT, *Circuit Judge.*

These consolidated appeals raise the question of whether certain institutions operated by the State of Indiana are subject to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

The Attorney General of Indiana admits in both cases that the state institutions did not pay the statutory overtime premium or maintain records as required by the Act. He argues, however, that these institutions are not covered by the Act because there is not the requisite connection to interstate commerce.

Appeal No. 74–1707 concerns two state operated institutions, the Indiana School for the Blind and the Indiana School for the Deaf. It was stipulated by the parties that a substantial number of the employees of these institutions "use or otherwise handle goods that were produced, manufactured, or have otherwise originated outside of the State of Indiana." The "goods" include food, canned goods, books, and furniture. The employees also regularly engage in placing and receiving out-of-state telephone calls, preparing and mailing letters and materials to points outside of Indiana, receiving interstate shipments and unloading them, and preparing and mailing transcripts and documents for students and faculty to points outside Indiana. The district court found that the employees of the schools were "engaged in commerce," were engaged "in the production of goods for commerce," and handled "goods that have been moved in or produced for commerce" so that the schools

---

1. The Honorable William J. Jameson of the United States District Court for the District of Montana is sitting by designation.

were enterprises engaged in commerce subject to the Act.

Appeal No. 74–1708 concerns twelve mental hospitals and two other similar institutions operated by the State of Indiana. Defendant admitted "that a substantial portion of the goods which the defendant uses in the operation of [the hospitals] are received from points outside the State of Indiana . . . ." The district court determined from this that the hospitals' employees must "handle or otherwise work on goods that have moved in commerce" and that the hospitals are therefore subject to the provisions of the Act.

### I

▮▮▮ The state has raised constitutional objections that must be disposed of initially. It argues that this suit is barred by the sovereign immunity provision embodied in the Eleventh Amendment. The contention is without merit. A suit brought by the Secretary of Labor to enforce the Fair Labor Standards Act is a suit by the United States. *See Mitchell v. McCarty,* 239 F.2d 721, 724 (7th Cir. 1957). The Eleventh Amendment does not apply to suits brought by the United States. *United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). The authority of the Secretary to bring this type of suit against a state was explicitly recognized in *Employees v. Mississippi Public Health Dep't,* 411 U.S. 279, 285, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

▮▮▮ The state also contends that this suit is barred by the Tenth Amendment because it interferes with powers reserved to the states. This argument has, in effect, already been rejected by the Supreme Court in *Maryland v. Wirtz,* 392 U.S. 183, 193–97, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). We find no basis for distinction in the fact that the case sought broad declaratory relief.[2]

### II

We proceed to the main issue in these cases: whether these institutions are covered enterprises within the meaning of section 3(s)(4), 29 U.S.C. § 203(s)(4), as that section stood before May 1, 1974. Section 203(s)(4), as applicable to these appeals, reads as follows:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

.    .    .    .    .

(4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit);

There is no dispute that these institutions are engaged in one of these enumerated operations. Nor is there a contention that the employees of these institutions do not handle various items that "have been moved in or produced for commerce." The state claims, however, that these items cannot be deemed "goods" as that term is used in the statute because the definition of goods in section 203(i) excludes "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." The question is

2. The rationale of *Maryland v. Wirtz* would also answer the defendant's claim based on the Guaranty Clause, U.S.Const. art. IV, § 4, assuming that this claim is even judicially cognizable.

whether these schools and hospitals are the ultimate consumers of these items.

One important point is that the supplies and food used for or given to the students and patients are not paid for by these recipients. On this basis it might be possible to distinguish *Brennan v. Dillion,* 483 F.2d 1334 (10th Cir. 1973), which held that an apartment house owner was not the ultimate consumer of paints, cleaning materials, and light bulbs used by his employees in the course of their maintenance duties. It could be argued that, unlike our cases, the tenants in *Dillion* were the ultimate consumers of these items because they indirectly purchased them as a part of their rent payments. We do not find this a proper basis for distinction. The rationale for *Dillion* is that the supplies "are for the use and benefit of the tenants." 483 F.2d at 1336. The items handled by the employees in our cases are for "the use and benefit" of the students and patients. They are a necessary part of the business of running a school or hospital. The fact that the students and patients might not pay for these items even indirectly is irrelevant. The Act uses the word "consumer" rather than the word "purchaser."

In an analogous case, the Eighth Circuit has reached the same conclusion in regard to articles such as medication or cleaning supplies used in state institutions. *Brennan v. State of Iowa,* 494 F.2d 100 (8th Cir. 1974), *cert. denied,* —— U.S. ——, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975).

Support for the conclusion we reach can also be found in the legislative history of the 1974 amendment of section 3(s) although that amendment is inapplicable here. The Act was changed to add the words "or materials" after the word "goods" in order to clarify what was thought to be the original "intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, *e. g.,* the soap used by a laundry," S.Rep.No.93–690, 93d Cong., 2d Sess., p. 17.

 We hold that these institutions are not the ultimate consumers of the items in question. We also hold that their employees do handle or otherwise work on "goods"[3] within the meaning of the Act.

The judgments of the district courts in both cases are affirmed.

---

3. Having determined that these employees do handle "goods" within the statutory meaning of that term we need not discuss the alternative alleged jurisdictional bases in No. 74–1707.