John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

INDUSTRIAL AMERICA CORPORATION et al., Defendants-Appellees.

No. 74–2370.

United States Court of Appeals, Fifth Circuit.

July 28, 1975.

William J. Kilberg, Sol., Carin A. Clauss, Associate Sol., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Reg. Sol., Edwin G. Salyers, Atty., Atlanta, Ga., Donald S. Shire, Jacob I. Karro, Attys., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Norman F. Burke, Orlando, Fla., for defendants-appellees.

Before GODBOLD, Circuit Judge, SKELTON, Associate Judge,* and GEE, Circuit Judge.

GODBOLD, Circuit Judge.

The Secretary of Labor brought this action against defendant-appellee Industrial America Corporation (Industrial) to enforce various provisions of the Fair Labor Standards Act, Act of June 25, 1938, 52 Stat. 1060, as amended, 29 U.S.C. § 201 *et seq.* (1970). The trial court held that Industrial was not covered by the act and the Secretary has appealed. We affirm.

The precise question before us is: Is a business which consumes gasoline and oil in the process of providing services to its customers the "ultimate consumer" of those goods for purposes of 29 U.S.C. § 203(i)?

Industrial is a garbage removal service. Its business is wholly intrastate. All of its customers are located in the state where it disposes of the garbage in local state-run landfills. Its only tie to interstate commerce is that it has four employees who use gasoline and oil—products that have moved in interstate commerce—in operating and maintaining the company's trucks.[1]

Coverage of the act extends to every enterprise which has employees who engage in commerce or the production of goods for commerce. Being an enterprise engaged in commerce includes having employees "handling, selling, or otherwise working on goods that have been moved in . . . commerce," 29 U.S.C. § 203(s) (1970).[2] But under the act's precise definition the term goods "does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

At first blush this definition would seem to resolve the matter. Industrial consumes the gasoline not only in an economic but in a physical sense as well, so no one else can claim physical possession after it. But the Secretary suggests policy reasons why Congress must have meant to include virtually every business—which would be the practical effect of its approach—and cites legislative and administrative history that is not inconsistent with its position. Two circuits have accepted this view and held that businesses are not the ultimate consumers of goods they consume in providing services to their customers. *Brennan v. State of Iowa*, 494 F.2d 100 (CA8, 1974), *cert. denied* ——— U.S. ———, 95 S.Ct. 2422, 44 L.Ed.2d 683 (order of June 9, 1975); *Brennan v. Dillion*, 483 F.2d 1334 (CA10, 1974). Both courts applied what they called an "economic benefits" test to determine whether the business or its customer was the real beneficiary of the consumption of the goods or bore the cost of them.[3] This approach necessarily read out of the act the "actual physical possession" language in the definition of goods in § 203(i).[4]

We think the clear and precise words of Congress should not be so easily disregarded in the absence of unequivocal

---

\* Of the U. S. Court of Claims, sitting by designation.

1. The Secretary belatedly noted that the trucks are also goods obtained from interstate commerce, although below he rested on the use of gasoline, oil and other lubricants as the sole tie to interstate commerce. Whether considered in terms of the gasoline or the trucks, however, our analysis is the same.

2. This section has since been amended. See footnote 7, *infra*.

3. In each case the court dealt with both goods physically transferred to the customer and goods which were never out of the possession of the business's employees. The case before us could be distinguished on the absence of the former type of goods. However, both courts clearly rejected any such distinction and used an economic rather than physical test that would produce the same results in a case such as that before us.

4. A different problem was presented in Brennan v. State of Indiana, 517 F.2d 1179 (CA7, 1975). The Seventh Circuit held that state-run schools and hospitals whose employees handled food and supplies used but not paid for by students and patients were not "ultimate consumers." Non-purchasing students and patients were said to be ultimate consumers. That court was not presented with the "actual physical possession" issue.

legislative history to the contrary. The legislative history in fact points the other way, consistent with the definition in § 203(i). We think the words should therefore be followed until Congress changes them.

■ At the outset, we note that the word consumer is not being used in its popular sense of a private, domestic (as opposed to business or commercial) user of goods. The definition excludes from the scope of ultimate consumer three categories of business enterprises. Had Congress meant to exclude all businesses from the definition of consumer, it surely could have done so much more directly. Moreover, not even all of these three categories are excluded. With respect to any given good, "ultimate consumer" does not include a "producer, manufacturer, or processor *thereof*" (emphasis added). Thus a manufacturer of one good can be the ultimate consumer of another. *A fortiori* other business enterprises, such as retail and service businesses, among others, can also be ultimate consumers of goods for the purposes of the act.[5] *Cf., Dillion, supra,* 483 F.2d at 1337.

To understand the scope of the act we must look to the various amendments to see how they varied the original act. As first passed the act reached only employees "engaged in commerce or the production of goods for commerce." These terms have two significant meanings. First, the act's reach was defined in terms of employees rather than employ-

ers. Second, the "engaged in commerce" language was far short of the reach of federal power under the Commerce Clause. Despite clear constitutional power, see 1961 U.S.Code Cong. & Admin.News at p. 1663, Congress rejected broader formulations based on "affecting commerce" or competition with goods produced in interstate commerce. See *Kirschbaum v. Walling,* 316 U.S. 517, 522–523, 62 S.Ct. 1116, 86 L.Ed. 1638, 1647 (1942).

Congress substantially expanded coverage under the act in 1961 in two ways. First, it shifted the basis of coverage from employees to employers. Under the new approach an employer was covered if two or more of its employees were engaged in commerce or the production of goods for commerce. Once the employer was covered all of its employees received the benefits of the act, not just those employees who were themselves engaged in commerce or the production of goods for commerce. The constitutionality of this "enterprise coverage" was considered and approved in *Maryland v. Wirtz,* 392 U.S. 183, 188–193, 88 S.Ct. 2017, 20 L.Ed.2d 1020, 1026–1029 (1968).

Second, Congress reached further than it had before under the Commerce Clause by including as an "enterprise engaged in commerce" one which had employees "handling, selling, or otherwise working on goods that *have been moved* in or produced for commerce . . . ." § 203(s) (emphasis added). This change

---

5. The purpose of putting this exclusion into the crucial definition of goods is to insure that it runs throughout the entire act. It cuts off coverage of the excluded parties as "producers" under the broad definition of that term in § 203(j) and it cuts off liability under the "hot goods" provision of § 215(a). If Congress had wanted to exclude only private, domestic "household" consumers from those two provisions it could have done so in those provisions themselves, or it could have more neatly tailored the definition of goods. As it now stands, the definition of goods is not only not inconsistent with a holding that certain businesses can be ultimate consumers but requires such a holding.

The Secretary attempts to refute the obvious meaning of the "ultimate consumer" language

by illustrating how it must include a private individual who buys a pair of shoes and carries them across state lines, thus subjecting himself to § 215(a) penalties but for the "ultimate consumer" language, and a domestic servant who prepares a salesman's clothes for an interstate business trip, which would render her a "producer" under § 203(j) but for the same language. This is unpersuasive, for it in no way proves or even suggests that Congress intended to exclude only these non-commercial individuals and did not also intend to exclude many small businesses whose only connection with interstate commerce was as consumers of goods produced in interstate commerce.

extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character. This so-called retrospective approach was very much at issue in the congressional debates because of the possible constitutional problems. See S.Rept.No.145, 87th Cong., 1st Sess., 1961 U.S.Code Cong. & Admin.News pp. 1620, 1621–1624, 1662–1665, and the Minority Views of Senators Goldwater and Dirksen, id., at 1671–1672, 1689–1693, and 1695–1696. See also the debates in Congress, 107 Cong.Rec. 5841–5843, 6234–6237, and 6240–6241. The constitutionality of federal regulation of commerce based on the use or handling of goods after they have completed their interstate movement was not reached in *Maryland v. Wirtz,*[6] *supra.* The lower courts that have considered it have held it to be within the Commerce Clause.[7] Because of our resolution of this case, we do not reach this constitutional issue.

■ The principal purpose of extending the reach of the act to those handling goods after their interstate movement had ended was to reach the massive retail industry. See S.Rept.No.145, 87th Cong., 1st Sess., 1961 U.S.Code Cong. & Admin.News pp. 1620, 1623, 1624, 1626–1627, 1662–1664. The 1961 expansion to this industry contained two additional volume-of-business requirements. One required that a business have annual gross sales exceeding $1 million. The other required that a business purchase for resale at least $250,000 in goods "that move or have moved across State lines." § 203(s)(1) (1964); see 75 Stat. 66. Though arguably redundant, the goods "for resale" requirement shows that Congress meant to base cov-

erage on goods still in commerce, even if only intrastate, and not in the hands of ultimate consumers. In considering constitutionality Congress centered its attention on retailers "that purchase or receive goods for resale which move or have moved across State lines," 1961 U.S.Code Cong. & Admin.News at pp. 1662–1663. This provision was "to make *doubly* certain that coverage of retail and service enterprises remains well within the framework of the present law . . . ." (emphasis added). 1961 U.S. Code Cong. & Admin.News at p. 1624. In specifically incorporating the term goods into its new coverage provisions Congress must therefore have specifically intended to include that definition with all its limitations.

■ When Congress again enacted significant amendments in 1966, it did not intend the kind of drastically different results here contended for by the Secretary. The definition of enterprise in § 203(s) was reorganized and the $250,000 volume of goods purchased for resale requirement was deleted. But nothing in the legislative history suggests that Congress thought it was doing anything more than varying the volume requirement. The expansion of coverage of retail employees was significant, but the impact on employees in "miscellaneous services" was expected to be slight. S.Rept.No.1487, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Admin.News pp. 3002, 3004, 3007, 3013. Thus it was not coincidence or oversight that left the basic definition of goods intact. Congress wanted to reach enterprises still in the stream of commerce, not local enterprises whose only connection with commerce was as consumers of interstate products.

■ We think Congress did not intend by such indirect means and with no clear statement of legislative intent to expand coverage of the Fair Labor Standards

---

**6.** There is a hint in Maryland v. Wirtz that the Court did not think there was an extension of coverage based on the handling of goods that had previously moved in interstate commerce, 392 U.S. at 188, 88 S.Ct. 2017, 20 L.Ed.2d at 1026. At the least, we think it clear that Con-

gress did intend a significant extension of coverage by the "had been moved" language.

**7.** Wirtz v. Mayer Construction Co., 291 F.Supp. 514, 517–519 (D.C.N.J., 1968); Wirtz v. Edisto Farms Dairy, 242 F.Supp. 1 (D.C. S.C., 1965).

Act to every enterprise in the nation doing business of $250,000 a year, which would be the practical result of the approach the Secretary here contends for. Congress recently said it thought that was the effect of its prior amendments, and amended the act to achieve that result.[8] But that amendment is prospective only, and Congress' failure to make clear its intentions in 1961 and 1966, if such they were, do not enable us to achieve what Congress itself did not do until 1974. We therefore hold that prior to its amendment in 1974 the Fair Labor Standards Act did not reach enterprises which provided only services to its customers and did not pass on any goods obtained from interstate commerce.[9]

Affirmed.

---

**8.** Fair Labor Standards Amendments of 1974, P.L. 93–259, 88 Stat. 59. This latest amendment leaves the definition of goods intact but circumvents it by a broader definition of "enterprise engaged in commerce." The new definition includes enterprises with "employees handling, selling, or otherwise working on goods *or materials* that have been moved in . . . commerce . . . " (emphasis added). *See* S.Rept. 93–690, 93d Cong., 2d Sess., p. 17 (1974).

**9.** Compare, *e. g.*, the construction and cleaning industries, referred to in the statute, §§ 203(s)(2) and (3), both of which pass on some physical product, *e. g.*, building materials, and hangers and protective covers, respectively.