**Ephriam COVINGTON, Plaintiff,**

v.

**Alphonso J. COOPER, Defendant.**

**Civ. A. No. J75–331(R).**

United States District Court,
S. D. Mississippi,
Jackson Division.

Feb. 14, 1977.

---

William R. Barnett, Jackson, Miss., for plaintiff.

Reuben V. Anderson, Anderson, Banks, Nichols & Stewart, Jackson, Miss., for defendant.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

Plaintiff Ephriam Covington, a resident of Jackson, Mississippi, brought this action against Alphonso J. Cooper, also a resident of Jackson, as the sole owner of Liz's Washerteria, located in Jackson, for unpaid minimum wages and unpaid overtime compensation alleged to be due by virtue of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. Plaintiff

alleged that Cooper, d/b/a Liz's Washerteria, is an enterprise engaged in commerce or in the production of goods for commerce inasmuch as his employees handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce by any person and that Cooper is engaged in laundering, cleaning, or repairing clothing or fabrics. Plaintiff claimed that during the period beginning August 11, 1973, and ending August 2, 1975, he was an employee of Cooper's, and that Cooper, during said period failed and refused to compensate plaintiff for minimum wages for each 40 hour workweek, and failed and refused to pay him overtime at a rate of not less than one and one-half times the rates to which he was entitled. Plaintiff claims that he was underpaid the sum of $12,-134.00, amended at trial to $24,946.70. He seeks judgment in the latter sum, plus an equal amount as liquidated damages, and an attorney's fee, all as provided by 29 U.S.C. § 216.

Prior to any answer filed or discovery, defendant moved to dismiss the action for failure to state a claim upon which relief could be granted. The Court denied the motion.

In his answer, Cooper averred that the character of plaintiff's work was not such as to place him in commerce or so closely related to the movement of commerce as to be a part of it, and, thus did not render the defendant liable under the minimum wage or maximum hours provisions of the Fair Labor Standards Act. Nor did plaintiff work as many as, nor in excess of, forty hours during any workweek covered by the complaint as the type of work performed by the plaintiff did not require, and was not intended to require, more than two hours a day. Finally, the defendant claimed that plaintiff was paid an average of $2.85 per hour during the period covered by the complaint, well in excess of the minimum hour requirement of the Act.

The case was tried to the Court and both parties have submitted proposed findings of fact and conclusions of law.

Plaintiff, fifty years old at the time of the trial, had a sixth-grade education. He testified that he was employed on August 11, 1973, by the defendant to work at defendant's location, known as Liz's Washerteria, which furnishes coin-operated washing machines for use by the local public. Plaintiff claimed that he was hired as manager to keep the building clean, make change for the customers, and keep customers from damaging the machines. He claimed that he went to work seven days a week at 5:30 a. m., when he opened the building, and worked until 10:00 p. m. for approximately 112 hours per week. His wages were $30.00 per week until January 1, 1974, when they were raised to $45.00 per week until July 15, 1974, during which period he looked after two machines owned by Cooper. He was cut back to $30.00 on July 15, 1974 for two weeks, and from August 1, 1974 to August 1, 1975, he was paid $35.00 per week. He claimed that he worked every day except when he was sick and except for one month when he quit because Cooper would not raise his pay. He said that when he began working for Cooper, Cooper gave him keys to open the building and no instructions except to make change for the customers and to keep customers from damaging the machines. Plaintiff was not required to close at night. Cooper furnished him $10.00 to $20.00 in coins for change. He occasionally ran the machines for customers, but denied that they paid for his services in doing so. He did no repairs, saying if a machine broke down, he put an "out of order" sign on it. At times he could clean up in five minutes; at other times it took as long as two hours. At the time of the trial plaintiff was still working for Cooper. In September 1975, plaintiff stated that Cooper gave him $200.00 after he was investigated by Wage and Hour investigators, following which Cooper told plaintiff to work only two hours a day. Plaintiff admitted that in 1966 he hurt his back while working for the City of Jackson, and since then had performed only light work. Plaintiff claimed he is entitled to $380.10 per week for the period August 11, 1973 to August 1, 1975. He admitted that he had

never made that much in any employment he had previously had. Plaintiff was the sole witness on behalf of himself.

The defendant was also his sole witness. Cooper testified that the washerteria is owned by his wife who is still paying for the machines. The machines at this location provide a gross revenue of approximately $300.00 per week. Cooper said that his wife employs him to manage this washerteria and two others which she owns. He stated that he used to open up Liz's Washerteria every morning where Covington would be hanging around. Cooper stated that Covington asked for a job, offering to clean up for $10.00 per week. After discussing the matter, Cooper said he agreed to pay Covington $30.00 a week, and, in return, Covington was to open up in the mornings, sweep, and wipe the machines off. This took about an hour a day. Covington was not required to close and lock the building at night as Cooper did this himself. Cooper considered plaintiff off duty at 7:00 a. m. If Covington occasionally ran a washing machine for a customer, Cooper said he had no objection as the customer was supposed to pay Covington for this service. Nor did he object to plaintiff's being hired by others for odd jobs, which he estimated as two or three times a week. Cooper said that Covington hung around the washerteria during the day with several other elderly men who had nothing to do, and was often not there at all. Cooper denied that he ever instructed Covington to stay there all day, or to make change for the customers. Cooper said he paid plaintiff, often in advance, in change, which he, Cooper, took out of the machines. Cooper testified that he had an employee at each of the other two washerterias owned by his wife, who had the same duties as plaintiff. They are employed to open up, clean up and wipe off the machines, after which they go on to their regular jobs. Cooper stated that plaintiff was off work three times during 1974 and 1975, twice when he was sick, once for four months, again for two months, and a third time when he quit for one month, during which times he was not paid. Cooper admitted that a Wage and Hour investigator advised him that he owed Cooper $200.00. Covington said he paid it, again instructing plaintiff not to work more than two hours a day. Cooper said he had never heard of any employee in a laundromat receiving a salary of $380.10 per week.

In the 1966 amendments to the Fair Labor Standards Act (Public Law 89–601), Section 102(c) amended subsection (s) (29 U.S.C. § 203(s)) by removing the gross annual business level tests of $1,000,000 for retail and service enterprises and brought within the coverage of the gross annual business test all enterprises having employees engaged in commerce in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce, lowering the minimum gross annual volume test for covered enterprises from $1,000,000 to $500,000 for the period from February 1, 1967, through January 31, 1969, and to $250,000 for the period after January 31, 1969. This amendment expanded coverage to include laundering or cleaning services, which appears under Section 203(s)(2), regardless of an annual gross volume of sales.

At the time defendant's motion to dismiss was before the Court, the Court had nothing before it but the bare bone allegations of the complaint which alleged that plaintiff was employed in an enterprise engaged in the laundering, cleaning or repairing of clothing or fabrics. Following the trial, defendant has again asserted that plaintiff's work was not such that places him in commerce or so closely related to the movement of commerce as to be a part of it. The Court agrees.

Although the Court has found two cases holding that employees of laundromats are covered by the Act, the Court finds a distinction here. In *Brennan v. Partida* (5 Cir. 1974), 492 F.2d 707, it was argued that two attendants at a self-service, coin-operated laundromat were independent contractors, an argument not made here. The Fifth Circuit Court of Appeals, in addressing this issue, applied the "economic realities" test

to find that the attendants were in reality employees, and thus covered under the Act. In *Wirtz v. Washeterias* (5 Cir. 1968), 304 F.Supp. 624, the court found that a corporation engaged in operating laundries in the Canal Zone, using soaps and other goods received from places outside the Canal Zone, was engaged in commerce within the meaning of the Act, and, hence, its employees were covered. No testimony was offered in the case sub judice as to any part of defendant's business that had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials [1] that have been moved in or produced for commerce by any person. Covington limited his evidence to the fact that he was the only employee of Liz's Washerteria, which offered a service to residents in the neighborhood, that is, the use of washing machines for hire. Assuming that the washing machines had initially moved in interstate commerce until purchased by the defendant or his wife, Covington's only connection with these machines was to wipe them off each morning, a matter of a few minutes of his time. There was no evidence that he had anything to do with the dispensing of soap, normally furnished by the customer. Cooper testified that his wife owned a total of three such washerterias, with one attendant at each, whose duties were the same as Covington's.

In *Dunlop v. Industrial America Corporation* (5 Cir. 1975), 516 F.2d 498, Judge Godbold explained that Congress substantially expanded coverage under the Act in 1961 in two ways, (1) shifting the basis of coverage from employees to employers, and (2) by including as an "enterprise engaged in commerce" one which had employees handling, selling or otherwise working on goods that have been moved in or produced for commerce. As stated by Judge Godbold, the principal purpose of extending the reach of the act to those handling goods after their interstate movement had ended was to reach the massive retail industry. In 1966, as noted by Judge Godbold, Congress, by additional amendments, deleted the requirement that an enterprise have an annual minimum of a $250,000 volume of goods purchased for resale. As to this it was Judge Godbold's conclusion that "Congress wanted to reach enterprises still in the stream of commerce, not local enterprises whose only connection with commerce was as consumers of interstate products." On this basis Judge Godbold found that prior to the 1974 amendment, the Act did not reach enterprises which provided only services to its customers and which did not pass on any goods obtained from interstate commerce. In this connection, except for the de minimus revenue derived by defendant from the rental of the washing machines, had plaintiff been a salesman of the machines or of any quantity of soap used therein, the Court would find him a covered employee. Even with the addition in the 1974 amendment (Public Law 93–259) to include employees handling, selling, or otherwise working on goods *or materials*, see footnote 1, the Court does not find that Liz's Washerteria is a business enterprise which has employees handling or working on goods *or materials* that have been moved in or produced for commerce. Liz's Washerteria, exclusive of defendant, who said he was the manager, not the owner, had *one* employee, plaintiff, whose duties were purely that of performing a service for the manager, a service that did not entail goods or materials that had been moved in or produced for commerce. Nor does this Court find that the coverage provided for employees of a business enterprise engaged in laundering, cleaning or repairing clothing or fabrics, as provided under Section 203(s)(2), should necessarily apply to plaintiff whose duties did not require him to have any part in the laundering or cleaning of clothing or fabrics, functions which the customers of Liz's Washerteria performed

---

1. The 1974 amendment to Section 203(s) (Public Law 93–259) includes enterprises with "employees handling, selling, or otherwise working on goods or <u>materials</u> that have been moved in . . . commerce . . . ", the underscored phrase having been added.

for themselves in machines furnished by the washerteria.

 If wrong in its conclusion, the Court nonetheless finds that plaintiff's duties required his attendance no more than two hours a day, more often less, and as little as five minutes, this by his own testimony, and hence his claim that he worked an average of sixteen hours a day, for a seven-day week of approximately 112 hours, entitling him to unpaid wages based on a forty-hour week and to overtime, is grossly exaggerated. After finishing his duties, the fact that he may have hung around, visiting with others, who found the washerteria a good place to spend idle moments, did not make him an employee during these hours. The Court is aware that the definition of "employ" in Section 203(g) includes "to suffer or permit to work", and that an absence of intent to create an employment relationship does not excuse an employer's obligation to pay what is due. See *Brennan v. Partida*, supra, and *Gulf King Shrimp Company v. Wirtz*, 5 Cir., 407 F.2d 508. Nonetheless, the credible evidence is that plaintiff was employed to unlock the doors of the washerteria between 5:30 and 6:00 a. m. every morning, sweep, and wipe off the machines, tasks which could readily be accomplished in less than two hours. He was not employed to attend the machines all day and up into the night, when Cooper himself emptied the coin boxes and locked up for the night. He was free to accept other employment after his duties at the washerteria were over, and did so, according to Cooper. He was not employed to repair the machines, which he admitted. He was not employed by Cooper to operate the machines for customers. Although Cooper was aware that Covington "hung around" the washerteria after his duties were over, visiting with others inside and outside the washerteria, Cooper's hours and weekly pay were agreed upon by Cooper and plaintiff. Even the Wage and Hour investigator, who made an on the scene inspection, but who was not a witness at the trial, urged Cooper to pay plaintiff the sum of $200.00 for the same period of time plaintiff makes claim herein, which sum Cooper paid, and which sum plaintiff acknowledged receiving. Cooper does not plead this payment as an accord and satisfaction or as a full settlement of plaintiff's claim, nor does the Court rely on this payment for its conclusion that plaintiff is not entitled to recover. The Court finds that plaintiff was not a covered employee within the meaning of the Fair Labor Standards Act, and, even if his employment could be so considered after the 1974 amendment, on the basis of his agreement with the defendant and the hours he actually worked, he was properly compensated for those hours, and he is otherwise not entitled to any sums for hours worked in excess of the minimum wages due for a regular 40 hour work week, nor to overtime.

An order may be submitted in accordance with this opinion dismissing this action, with court costs assessed to plaintiff.