Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Gloria BAKER, Individually, d/b/a Sparrowbush Apartments; William J. Magee, Individually, Defendants.

No. 79–CV–579.

United States District Court, N. D. New York.

Oct. 21, 1980.

Francis V. LaRuffa, Regional Sol., U. S. Dept. of Labor, New York City, for plaintiff; Carin Ann Clauss, Sol. of Labor, Washington, D. C., Esther D. Curtwright, Atty., U. S. Dept. of Labor, New York City, of counsel.

Leon C. Baker, New York City, for defendants.

## MEMORANDUM–DECISION

JAMES T. FOLEY, Senior District Judge.

In the period immediately following the successful completion of the American Revolution of 1776, the unity among the States which had been forged through their common dedication to that noble cause was eroded by a parochial pursuit of commercial self–interest. Indeed, the inability of the national government to alleviate this source of discord has been identified as the single most important factor exposing the inadequacy of the Articles of Confederation. There can be little doubt that as serious as the deficiencies and as inadequate to

the requirements of a unified nation as the Articles were, it was upon the incapacity of Congress to manage the commercial affairs of the Confederation that the movement to reorganize the government rested. In the absence of the problem of commerce . . . there would have been no Federal Convention and no Constitution.

P. Smith, *The Shaping of America* 50 (1980). The remedy prescribed by the Constitutional Convention of 1787 comes to us as U.S.Const. art. I, § 8, cl. 3, empowering Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

One hundred and fifty years after the ratification of the Constitution, Congress addressed the problem of the existence of labor conditions detrimental to the general well being of working men and women. Invoking its power conferred by the commerce clause, it promulgated the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. §§ 201–219 (FLSA). It is with the extent to which Congress sought to include within the statute businesses largely local in nature, and whether in so doing it has transgressed the limits of its authority, that this litigation is concerned.

Plaintiff Ray Marshall, Secretary of the United States Department of Labor, commenced this action against defendants Gloria Baker, doing business as Sparrowbush Apartments, and William J. Magee, for alleged violations of the FLSA. Defendants have moved, pursuant to Fed.R.Civ.P. 56, for summary judgment dismissing the complaint on the grounds that 1) plaintiff has failed to state a claim upon which relief can be granted, and 2) defendants are not within the purview of the FLSA. Plaintiff resists summary disposition in defendants' favor, and has cross–moved, under Rule 56 as well, "for partial summary judgment as to subject matter jurisdiction".

I conclude that Congress intended the Act to apply to businesses such as defendants', and that as so applied Congress has not exceeded its constitutional power under the commerce clause. It is further my judgment that the Secretary's motion is procedurally inappropriate. Both defendants' motion for summary judgment of dismissal and plaintiff's cross–motion for partial summary judgment are therefore denied.

### FACTS

Defendant Gloria Baker resides in Scarsdale, New York. She conducts business under the name of Sparrowbush Apartments, located in Latham, New York, and is engaged in the management and control of that residential complex. Defendant William J. Magee has an office in Cohoes, New York, and is the managing agent of Sparrowbush Apartments.

Plaintiff charges defendants with several violations of the FLSA, the provisions of which are allegedly applicable to their management of Sparrowbush, and brings this action to secure their compliance. Specifically, plaintiff alleges that since August 29, 1976, defendants have violated 29 U.S.C. §§ 206 and 215(a)(2) by paying their employees less than the minimum hourly wage; that defendants have violated 29 U.S.C. §§ 207 and 215(a)(2) by failing to compensate employees, for time worked in excess of 40 hours per week, at rates at least one and one–half times the regular rates; that defendants have violated 29 U.S.C. §§ 212 and 215(a)(4) by employing child labor in excess of the maximum number of hours permitted; and that defendants have violated 29 U.S.C. §§ 211(c) and 215(a)(5) by failing to maintain adequate and accurate records of some of their employees and of their wages, hours, and other conditions of employment. The prayer for relief seeks judgment permanently enjoining defendants from violating the enumerated sections of the statute.

The essence of defendants' position is that inasmuch as Sparrowbush is not an "[e]nterprise engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s), the FLSA does not apply to their management of the complex. In support of their motion for summary judgment, defendants submitted the affidavit of William J. Magee.

Magee affirms that all of Sparrowbush's one hundred and forty-four apartments are used for residential purposes. No manufacturing or other commercial activity, apart from management of the complex itself, is conducted on the premises. The project has three regular employees, a superintendent and two maintenance men, all of whom live on the grounds. From time to time, the project employs high school boys through the local youth employment service to cut grass and to assist in snow removal. Sparrowbush has an operating budget of approximately $27,500 per month. More than 97% of that sum goes for intangibles (i. e., mortgage payments, taxes, insurance, water and sewer charges, repairs, office expenses, and labor), while less than 3% is used to purchase tangible personal property. The items which the complex does purchase include lightbulbs, cleaning chemicals, paints, floor finishing chemicals, replacement lock sets, panes of glass, refrigerator and stove parts, nails, screws, paint rollers, and glazier's putty.

In opposition to defendants' motion, plaintiff submitted an affidavit of Samuel L. Weitman, Albany Area Director of the United States Department of Labor. Weitman supervised the investigation of defendants for possible violations of the FLSA. That investigation revealed that defendants regularly purchase goods that have been manufactured outside New York, either directly from an out-of-state supplier or from an in-state supplier following movement of the goods in interstate commerce. Examples of these purchases include an average of $400 per year over a two year period for repair parts for Cadet lawn mowers originating in Baltimore, Maryland and Chicago, Illinois; approximately $175 per month over a two year period for blower assemblies, heat exchangers, and compressors originating in Indianapolis, Indiana; approximately $80 per month over a two year period for cleaning machines and plumbing repair parts originating in McKees Rock, Pennsylvania; and approximately $78 per month over a two year period for appliance parts originating in Ferndale and Troy, Michigan and Chatta-nooga, Tennessee. In addition, during a twelve month period, $2,572.35 was spent on janitorial products and supplies which originated in and were purchased directly from Cleveland, Ohio.

Defendants concede the accuracy of this data for purposes of their motion. They argue that, even accepting the foregoing as true, Congress never intended to include within the FLSA a business such as theirs. Moreover, they argue that should it be decided that the statute does apply to them, then as so construed the FLSA is unconstitutional.

## DISCUSSION

### A. *Defendants' Motion for Summary Judgment*

Defendants' position raises questions of both statutory interpretation and constitutionality. The former will be entertained first, since only if it be decided that the FLSA applies to defendants' apartment complex need the constitutionality of that construction be considered.

### 1. *The Construction of 29 U.S.C. § 203(s)*

29 U.S.C. § 203(s) defines "[e]nterprise engaged in commerce or in the production of goods for commerce," the central concept determinative of the applicability of the FLSA to defendants' business. Prior to the 1974 amendments, that section provided (emphasis added):

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, *including* employees *handling*, selling or otherwise working on goods that have been moved in or produced for commerce by any person, and which ... is an enterprise ... whose annual gross volume of sales made or business done is not less than $250,000 ...

As amended in 1974 by Pub.L.No.93-259, § 6(a)(5), this section now reads (emphasis added):

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, *or* employees *handling*, selling, or otherwise working on goods *or materials* that have been moved in or produced for commerce by any person, and which . . . is an enterprise . . . whose annual gross volume of sales made or business done is not less than $250,000

. . .

There is no question that Sparrowbush satisfies the dollar volume test for statutory coverage. The issue here is what was meant by Congress's substitution of the disjunctive "or" for "including," the addition of "materials", and its consistent use of "handling".

Considerable light is shed on all these issues by the Senate Report on the Fair Labor Standards Amendments of 1974, S.Rep.No.93–690, 93rd Cong., 2d Sess. 17 (1974) (citations omitted) (emphasis in original):

In addition to expanding coverage, the bill amends section 3(s) by changing the word "including" to "or," to reflect more clearly that the "including" clause was intended as an additional basis of coverage. This is, in fact, the interpretation given to the clause by the courts. The bill also adds the words "or materials" after the word "goods" to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, *e. g.,* the soap used by a laundry. The "handling" language was added based on a retrospective view of the effect of substandard wage conditions.

While the original Act recognized the effect of such conditions on subsequent interstate *out* flow of products, it was not until the 1961 amendments that Congress specifically recognized their effect on the prior interstate *in* flow, based on the "obvious economic fact that demand for a product causes its interstate movement quite as surely as does production." Al-

though a few district courts have erroneously construed the "handling" clause as being inapplicable to employees who handle goods used in their employer's own commercial operations, the only court of appeals to decide this question, and the majority of the district courts have held otherwise and the addition of the words "and materials" will clarify this point.

■ Both on its face and when read in conjunction with the pertinent legislative history, then, the definition of "enterprise engaged in commerce or in the production of goods for commerce" would seem to include a local business whose employees use materials which have at some point moved in interstate commerce. That is the construction this section has received from several courts.

In *Dunlop v. Industrial America Corporation,* 516 F.2d 498 (5th Cir. 1975), the Fifth Circuit held that an intrastate garbage removal service which consumed gasoline and oil that had previously moved in interstate commerce was not covered by the FLSA as it read prior to the 1974 amendments. In the course of rejecting an expansive interpretation of the pre–1974 Act, the court made the following instructive comments on the 1974 amendments, *id.* at 501–02 (footnote omitted) (emphasis added):

We think Congress did not intend by such indirect means and with no clear statement of legislative intent to expand coverage of the Fair Labor Standards Act to every enterprise in the nation doing business of $250,000 a year, which would be the practical result of the approach the Secretary here contends for. *Congress recently said it thought that was the effect of its prior amendments, and amended the act to achieve that result.* But that amendment is prospective only, and Congress' failure to make clear its intentions in 1961 and 1966, if such they were, do not enable us to achieve *what Congress itself did not do until 1974.*

Perhaps no federal court has given more consideration to the applicability of this statute in its various forms to apartment complexes than has the District of Dela-

ware. In *Brennan v. Apartment Communities Corp.*, 360 F.Supp. 1255 (D.Del.1973), that court held that because the cleaning supplies in the hands of maintenance personnel, which had previously moved in interstate commerce, were not "goods" as defined by 29 U.S.C. § 203(i), the provisions of the FLSA did not apply to the defendant apartment complex in that case. One year later, in *Brennan v. Jaffey*, 380 F.Supp. 373 (D.Del.1974), the court was faced with the applicability of the FLSA as amended in 1974 to an apartment complex whose maintenance personnel used supplies which had moved in interstate commerce. While adhering to its decision in *Apartment Communities* for the period prior to May 1, 1974, the effective date of the 1974 amendments, the court, relying on S.Rep.No.93–690 set out *supra*, interpreted the Act in its amended form as follows, 380 F.Supp. at 379 (emphasis added):

The 1974 Report, however, is of considerable significance in ascertaining what was intended when the amendment became effective May 1, 1974, by inserting the word "materials" in § 203(s). It clearly discloses a legislative purpose to make the minimum wage, overtime and record keeping provisions of the Act applicable to employers, such as the defendant, after its effective date. *Its actual effect was therefore to expand its future coverage . . . .*

In *Marshall v. Whitehead*, 463 F.Supp. 1329 (M.D.Fla.1978), the court was required to determine the applicability of the FLSA to a local fill dirt operation. The time frame involved in that litigation spanned the periods both before and after the effective date of the 1974 amendments. The opinion is therefore divided into separate sections which consider individually the coverage of the statute with and without the relevant changes. Not surprisingly, the quoted portions of the opinion in which the defendants find comfort are taken from the section dealing with the statute prior to May 1, 1974. Of course, it is the section dealing with the statute as amended that year that is here relevant, and which defendants ignore.

For the period governed by the 1974 amendments, the Secretary based coverage under the FLSA on the fact that certain of defendants' employees handled petroleum products, tires, and mechanical parts used in fueling, lubricating, and maintaining defendants' trucks and equipment which, although purchased locally, had previously moved in interstate commerce. In accepting this as a sufficient basis triggering the statute's provisions, the court held, 463 F.Supp. at 1337 (footnote omitted) (emphasis added):

It appears clear to the Court that, regardless of the conflict which has arisen among the courts on the question of enterprise coverage, prior to the 1974 amendments to the Act, based solely upon the handling by employees of articles used in an employer's own business which have traveled interstate, *there almost certainly can be no question as to the intended scope of Section 3(s) so as to include such employees after the passage of the said amendments.*

Finally, in *Goldberg v. Graser*, 85 Lab. Cas. (CCH) ¶ 33,737 (Fla.Dist.Ct.App.1978), the court held that where an apartment complex in Jacksonville, Florida, employed workers who handled materials which had traveled in interstate commerce prior to having been purchased locally, the apartment complex was covered by the FLSA.

■ Against the force of this legislative history and judicial precedent, defendants' arguments have little weight. They contend first that the Secretary is bound by the definition of the statutory term "handling" as contained in his own regulations, which is allegedly much narrower than that for which he currently contends. The argument continues that as so defined by the regulations, "handling" includes only activities which are steps in, or facilitate, the production, transportation, distribution, sale, and delivery of goods to the ultimate consumer. Thus, the mere use in the course of defendants' business of that which has traveled in interstate commerce is claimed to be outside the regulatory definition.

The difficulty with this position is that the Secretary's regulation cannot be confined to the narrow meaning which defendants ascribe to it. 29 C.F.R. § 779.240(b) provides in pertinent part (emphasis added):

In general, the term "handling ... or otherwise working on goods" includes employees who sort, screen, grade, store, pack, label, address, transport, deliver, print, type, *or otherwise handle or work on the goods*. The same will be true of employees who handle or work on "any part of [sic] ingredient of the goods" ...

While it is clear that this language includes those engaged in the activities enumerated by defendants, in my judgment it cannot be limited to them.

Defendants next contend that the 1974 amendments to the FLSA were nothing more than "a correction of a minor technical error of interpretation". They argue that many cases under the statute were decided upon metaphysical distinctions as to what were or were not "goods" for purposes of 29 U.S.C. § 203(i). Thus, when Congress added the phrase "or materials" to § 203(s) in 1974, its purpose was to focus the attention of the Secretary and the courts on the question whether goods or materials were being "handled" as that term is used in the Act.

 The legislative history discussed *supra* completely belies this asserted interpretation. S.Rep.No.93–690 makes clear that the addition of "materials" after the word "goods" signified the congressional intent to bring within that additional basis of coverage those businesses which handle products consumed in the course of their operations. The example provided by the Senate itself puts to rest any question of the applicability of the statute to defendants: if a local laundry is covered because the soap which it uses moved in interstate commerce, then an apartment complex is covered because the materials used by its maintenance personnel moved in interstate commerce.

It is therefore my judgment that defendants are within the terms of the FLSA as amended.

### 2. The Constitutionality of the FLSA

Having interpreted the FLSA in the manner proposed by plaintiff, I must address defendant's contention that the statute as so construed is unconstitutional. It is not an argument requiring extensive comment.

Ever since *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941), the constitutionality of the FLSA has been consistently upheld. While the statute cannot be applied to displace the ability of the States to structure their own employer–employee relationships in areas of traditional government functions, see *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), *overruling Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), that problem does not exist in a case such as this dealing exclusively with the private sector.

Simply stated, the constitutional issue in this case is whether Congress has exceeded its power under the commerce clause by subjecting businesses to the FLSA on the basis of their handling of goods or materials after they have completed their interstate movement. That issue has been extensively considered in the past, with the conclusion being reached that this was well within Congress's power. *See Wirtz v. Mayer Construction Co.*, 291 F.Supp. 514 (D.N.J.1968); *Wirtz v. Edisto Farms Dairy*, 242 F.Supp. 1 (E.D.S.C.1965), and cases there cited.

Defendants argue that the approximately 3% of their purchases which are made for goods which have moved in interstate commerce is too insubstantial to be constitutionally subject to the Act. But these purchases have been shown to be made on a regular basis and are essential to the continued operation of Sparrowbush. Moreover, the statute requires no minimum amount of such purchases before its provisions apply to an enterprise. While the amount in this instance may be small, it is sufficient to my mind to render the Act constitutionally applicable. *Cf. Maryland v. Wirtz, supra*, 392 U.S. at 196–97 n.27, 88

S.Ct. at 2023–24, *overruled on other grounds, National League of Cities v. Usery, supra,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245; *Mabee v. White Plains Publishing Co.,* 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946).

Defendants cite *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), as an example of how this Court should construe the FLSA to avoid having to decide a constitutional issue. There, the Supreme Court held that the "in commerce" language of the Clayton and Robinson–Patman Acts, unlike that of the Sherman Act, was concerned only with persons or activities in the flow of interstate commerce. That issue is one of congressional intent. In a report accompanying the 1961 amendments to the FLSA, it was declared that while the basis of the statute was engagement "in commerce" or in the "production of goods for commerce", rather than activity "affecting commerce", *"[t]he coverage provided is substantially the same".* S.Rep.No.145, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code Cong. & Ad.News 1620, 1662 (emphasis added).

■ I therefore conclude that the FLSA, construed so as to subject defendants to its terms, is a valid legislative exercise pursuant to Congress's power under U.S.Const. art. I, § 8, cl. 3. Defendants' motion for summary judgment is therefore denied.

### B. *Plaintiff's Cross–Motion for Partial Summary Judgment*

As previously stated, plaintiff has responded with a cross–motion for partial summary judgment as to subject matter jurisdiction. That motion is inappropriate and is denied.

■ In the first place, if the issue at bar were subject matter jurisdiction, a motion under Rule 56 would not be proper because that device is intended to be used in connection with the merits of an action. Since subject matter jurisdiction is matter in abatement rather than in bar, a motion for summary judgment is not warranted. 6 *Moore's Federal Practice* ¶ 56.03 at 56–55–56–57 (2d ed. 1976).

■ The issue here is not whether there is subject matter jurisdiction, but rather whether plaintiff's complaint states a claim upon which relief can be granted. *See Brennan v. Jaffey, supra,* 380 F.Supp. at 375; *cf. George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 n.3 (2d Cir. 1977). Having determined that a claim is stated by plaintiff's complaint, my denial of defendants' motion for summary judgment allows this case to proceed in the normal course of events. Actually, plaintiff's cross–motion is really one for partial summary judgment to the effect that his complaint does state a claim. But that is no more an appropriate use of Rule 56 than would be a motion thereunder addressed to jurisdiction. Plaintiff's cross–motion is therefore denied.

### CONCLUSION

For the reasons given, I conclude that the Fair Labor Standards Act of 1938 applies to defendants' operation of Sparrowbush Apartments and as so applied is constitutional. I therefore deny defendants' motion for summary judgment.

I further conclude that plaintiff's cross–motion for partial summary judgment is procedurally inappropriate, and it is hereby denied.

It is so Ordered.