650 F.2d 228
 24 Wage & Hour Cas. (BN 1410, 91 Lab.Cas. P 34,015
 Kathleen A. HARDING, Kathleen A. Nuzum, Debra J. Cross, John
M. Ramsey, Garrett Giann, Ben F. Foecke, Fred A.
Bessol, John A. Biggs, Ernie Gomez, and
Roxanne Erfle Gomez,
Plaintiffs-Appellees,
v.
KURCO, INC., a Colorado Corporation dba Fred Astaire Dance
Studios of Colorado and dba Fred Astaire Dance
Studio Co. of Denver and dba Fiesta
Dance Club, Defendant-Appellant.
 No. 79-2119.
 United States Court of Appeals,
Tenth Circuit.
 Submitted March 20, 1981.
Decided May 26, 1981.
 
 H. Earl Moyer of Moyer & Beal, Lakewood, Colo., for plaintiffs-appellees.
 Richard K. Clark and Gregory B. Kanan of Rothgerber, Appel & Powers, Denver, Colo., for defendant-appellant.
 Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a Fair Labor Standards Act case. The plaintiffs are ten former employees[1] of a dance studio in Denver, Colorado, which is owned and operated by the defendant, Kurco, Inc., a Colorado corporation. Kurco does business under the trade names of Fred Astaire Dance Studio of Colorado and Fred Astaire Dance Studio Company of Denver. The plaintiffs sought back pay based on Kurco's failure to pay minimum wages and overtime pay as required by the Fair Labor Standards Act. 29 U.S.C. §§ 201-219 (1976, Supp. I 1977 and Supp. II 1978).
 
 
 2
 Kurco challenged the jurisdiction of the District Court, claiming that it was not engaged in interstate commerce and therefore did not come within the purview of the Act. The District Court held an evidentiary hearing on the issue and concluded that Kurco was subject to the Act. The case was then referred to a United States Magistrate for trial to determine the amounts of back pay due to the individual plaintiffs. The parties stipulated that the Magistrate's order would be final and not subject to review by the District Court. After hearing, the Magistrate entered an order setting the amounts of back pay.[2] Kurco appealed directly to this Court. On appeal, we dismissed on the ground that the Magistrate's order was not a final decision of a district court which could be appealed to a Circuit Court under 28 U.S.C. § 1291 (1976). Harding v. Kurco, Inc., 603 F.2d 813 (10th Cir. 1979).
 
 
 3
 On remand, the District Court reviewed the Magistrate's opinion and order and entered findings, conclusion and judgment. The District Court concluded that the Magistrate's findings as to back pay amounts were correct, and ordered Kurco to pay attorneys' fees and costs. From the judgment of the District Court, Kurco appeals. The only issue raised here is the jurisdictional question. Kurco claims that, because of its lack of interstate contacts, it is not subject to the Act, and that the District Court therefore lacked subject matter jurisdiction.
 
 
 4
 As originally enacted in 1938, the Act applied only to employees who were themselves engaged in interstate commerce. By amendments in 1961 and 1966, the Act was extended to cover all employees of an employer who was himself engaged in interstate commerce.[3] The Act, as amended, now encompasses any "enterprise engaged in commerce " which, under the Act, means an "enterprise which has employees engaged in commerce." The Act defines "commerce," as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b) (1976).
 
 
 5
 Against this statutory backdrop, it becomes necessary to examine the evidence relating to Kurco's operation. Certain facts were stipulated. Additionally, there were seven witnesses, including four former employees of Kurco, two students who had gone to Kurco for dance instruction, and Kurco's present manager.
 
 
 6
 The defendant is a franchisee of a national company, Fred Astaire Dance Studios, which has outlets in many states. Kurco is limited by its franchise agreement to operating in Colorado, although its articles of incorporation permit it to conduct business elsewhere. The Colorado company's gross revenues for 1974-77, the years for which overtime pay and minimum wages are sought, were $1,610,940.[4]
 
 
 7
 Various devices are used by Kurco to maintain its students' interest in dance instruction. Among these is participation in national dance competition. The franchisor, Fred Astaire, regularly sponsors national contests in Las Vegas, Nevada, and Miami, Florida. Students who can afford to enter these contests must also pay for travel and other expenses of their instructors, who accompany the students. A competing student pays Kurco a lump sum to cover all expenses of both student and instructor, with Kurco then making all travel arrangements. The record shows that Kurco students and employees went on four such trips.
 
 
 8
 Another device used to keep students interested in the defendant's services was occasional "pleasure trips," i. e., travel not involving dance contests. Again, these trips, offered to those students who could afford them, involved interstate travel of both students and instructors. The record shows that, during the years involved in this litigation, there were pleasure trips to Europe and to Hawaii.
 
 
 9
 Based on the evidence which we have thus summarized, the District Court concluded that Kurco was subject to the Act. The District Court did not err. The record clearly supports the conclusion that Kurco has "employees engaged in commerce," as that phrase has been interpreted by the courts. In order for an employer to be subject to the Act, it is not necessary that his interstate contacts be overwhelming. Under the Act, it is only necessary that he have more than one employee "engaged in commerce." See, e. g., Brennan v. Metropolitan Trash, Inc., 513 F.2d 1324 (10th Cir.), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975) (local trash collection company subject to the Act), and Brennan v. Keyser, 507 F.2d 472 (9th Cir. 1974), cert. denied, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975) (jurisdiction based on local towing companies' use of federal highways or roads connecting with federal highways). In this same general connection, see Mabee v. White Plains Publishing Co., 327 U.S. 178, 180-81, 66 S.Ct. 511, 512, 90 L.Ed. 607 (1946), in which the Court found that a newspaper publisher which sent out of state only about one-half of one percent of its daily press run, which was about forty-five newspapers out of 9,000 to 11,000 published daily, was covered by the Act.
 
 
 10
 Judgment affirmed.
 
 
 
 [1]
 There initially were two cases. In Harding v. Kurco, Inc., Civil Action No. 77-M-601 (D.Colo. Oct. 1, 1979), eight former employees sued. In Gomez v. Kurco, Inc., Civil Action No. 77-M-874 (D.Colo. Oct. 1, 1979), two former employees sued. The court below consolidated the two cases after determining that Kurco came within the requirements of the statutes under which the plaintiffs sued
 
 
 [2]
 The Magistrate found for the plaintiffs in amounts ranging from $124.35 to $1,972.94. The total judgment for all ten plaintiffs was $8,486.28 in back pay, plus $3,000 in attorneys' fees and $36 in costs. These amounts were not challenged in the previous appeals and are not challenged now
 
 
 [3]
 The Act has been amended several times since it was passed in 1938. The law originally set the pay rates and hours only of those employees who were themselves engaged in commerce or in the production of goods for commerce, or in a closely related process or occupation directly essential to such production. Prior to 1961, coverage was determined solely on an employee-by-employee basis. The Act was made applicable to retail outlets of goods or services by amendments effective on September 3, 1961, and on February 1, 1967. The 1961 amendments enlarged the scope of the Act by adding to the employee-by-employee coverage another basis for jurisdiction: Employment in an "enterprise engaged in commerce or in the production of goods for commerce." H.R.Rep. No. 93-313, 93d Cong., 2d Sess., reprinted in (1974) U.S.Cong. & Ad.News 2811, 2814-15
 The 1961 amendments shifted the basis for coverage from the employee to the employer, so that an employer comes under the Act if two of more of its employees are "engaged in commerce." See Dunlop v. Industrial America Corp., 516 F.2d 498, 500-01 (5th Cir. 1975), and cases and legislative history cited therein. The "enterprise coverage" of the 1961 amendments basically provides that, if a particular unit of employment falls within the Act, then the entire work force comprising that employment unit is covered.
 The scope of the Act was expanded again by amendments effective on May 1, 1974. These amendments extended coverage of the Act in the area of "service establishment" employees. "Service establishment" is defined in 29 U.S.C. § 213(a) (1976) as a business which provides something "not for resale" and which is recognized in the industry as service oriented.
 We note that, while one might argue whether or not Kurco was covered by the provisions of the Act prior to 1974, there can be little doubt that the defendant comes within the Act as changed by the 1974 amendments. See Dunlop, 516 F.2d at 501-02. We also note that the plaintiffs here do not seek back pay for any violations of the Act occurring prior to the effective date of the 1974 amendments.
 
 
 [4]
 The defendant's gross revenues were $389,051 for 1974; $350,000 for 1975; $475,000 for 1976; and $396,889 for the first ten months of 1977
 The Act provides for an exemption for certain small retail and service businesses. Kurco does not, however, qualify for this exemption, since it had more than $250,000 in sales in each of the years involved. 29 U.S.C. §§ 203(s) and 213(a) (1976).