# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2020

Lyle W. Cayce
Clerk

No. 19-50638

Ruben Molina-Aranda; Jose Eduardo Martinez-Vela;
Juan Gerardo Lopez-Quesada,

*Plaintiffs—Appellants*,

*versus*

Black Magic Enterprises, L.L.C., *doing business as* JMPAL
Trucking; Carmen Ramirez; Jessie Ramirez, III,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:16-cv-376

Before Owen, *Chief Judge*, and Dennis and Haynes, *Circuit Judges*.
Haynes, *Circuit Judge*:

Plaintiffs allege that Carmen and Jessie Ramirez brought them to the United States under the H-2B visa program to work as construction workers. Once Plaintiffs arrived in the United States, however, the Ramirezes allegedly made them work as truck drivers, who typically receive higher wages and for whom H-2B visas are consequently harder to obtain. But Plaintiffs never saw those higher wages; instead, they claim they were paid worse than either truck drivers or construction workers, with the Ramirezes

No. 19-50638

unlawfully deducting from their paychecks, denying them overtime pay, and sometimes failing to pay them entirely.

Plaintiffs sued Carmen and Jessie Ramirez and their company, Black Magic Enterprises, L.L.C. ("Black Magic"), claiming, as relevant here, that the Ramirezes violated (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and (2) the Fair Labor Standards Act ("FLSA"). The district court dismissed those claims for failure to state a claim, declined to exercise supplemental jurisdiction over Plaintiffs' related state law claims, and denied Plaintiffs' later-filed motion for leave to amend the complaint.

For the following reasons, we AFFIRM the district court's dismissal of Plaintiffs' RICO claims and the district court's denial of Plaintiffs' motion for leave to amend, REVERSE the dismissal of Plaintiffs' FLSA claims, VACATE the dismissal of the state law claims, and REMAND for further proceedings.

## I.      Background

Plaintiffs are former employees of the Ramirezes who were brought to work for Black Magic in Texas under the United States Department of Labor's H-2B guest worker visa program.[1] H-2B visas allow employers to bring foreign workers to the United States for temporary non-agricultural work if (1) "qualified workers in the United States are not available" and (2) "the alien's employment will not adversely affect the wages and working conditions of similarly employed United States workers." 8 C.F.R. § 214.2(h)(6)(iv)(A); *see* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). To obtain an H-

---

[1] Black Magic filed for bankruptcy and has since been dismissed from the case.

2B visa for an employee, the employer must first apply for and obtain a labor certification with the Department of Labor.  8 C.F.R. § 214.2(h)(6)(iii)(C).

Plaintiffs alleged that the Ramirezes "systematically defrauded the federal government to obtain" the visas that brought them to the United States by misrepresenting to the Department of Labor the type of work Plaintiffs would perform.  According to Plaintiffs, the applications the Ramirezes submitted claimed falsely that Black Magic sought guest workers for "physical labor at construction sites . . . operat[ing] hand and power tools of all types."  Plaintiffs alleged that the Ramirezes obtained a labor certification by stating that the "offered wage" for such work "equal[ed] or exceed[ed] the highest of the most recent prevailing wage for the occupation"—$13.72 per hour.  Plaintiffs alleged that, after obtaining that certification, the Ramirezes additionally submitted H-2B visa applications stating that they would "pay at least the offered wage . . . during the entire period of th[e] application," minus "authorized and reasonable deductions."

Plaintiffs claimed, however, that the Ramirezes knowingly lied in those materials: the Ramirezes did not want physical laborers—they actually wanted heavy truckers.  That lie, Plaintiffs claimed, was central to the Ramirezes getting the visas in the first place.  Heavy truckers are paid more than physical laborers at $20 per hour, and, because there might be American citizens willing to work at that rate, the Ramirezes might not have been able to get the H2-B visas had they told the truth in their applications.  According to Plaintiffs, the Ramirezes' gambit paid off; although Plaintiffs were ostensibly brought in as construction workers, the Ramirezes made them work as heavy truck drivers once they arrived.  But Plaintiffs did not make $20 per hour—or even the $13.72 per hour they were initially promised.  Instead, because the Ramirezes allegedly unlawfully deducted from their pay, failed to pay overtime despite work weeks between fifty and eighty hours, and

sometimes failed to pay Plaintiffs entirely, Plaintiffs claimed they effectively made much less.

On the basis of these allegations, Plaintiffs sued the Ramirezes in federal district court. In their complaint, Plaintiffs sought relief under RICO's civil penalty section, 18 U.S.C. § 1964(c); the FLSA, 29 U.S.C.§ 216(b); and Texas state law. The district court dismissed the federal causes of action with prejudice for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). With no federal claims left, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims. After their complaint was dismissed, Plaintiffs filed a motion for leave to amend, which the district court denied. Plaintiffs timely appealed.

## II. Jurisdiction & Standard of Review

The district court had federal-question jurisdiction over Plaintiffs' RICO and FLSA claims, *see* 28 U.S.C. § 1331, and we have jurisdiction to review the district court's final judgment, *see id.* § 1291.

We review a district court's dismissal under Rule 12(b)(6) de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). To meet the pleading standard of Rule 12(b)(6), plaintiffs must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, allegations of fraud—like the predicate acts Plaintiffs allege in connection with their RICO claims—must meet Rule 9(b)'s heightened pleading standard, under which plaintiffs "must state with particularity the circumstances" of the allegedly fraudulent conduct. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Accordingly, plaintiffs alleging fraud must additionally describe, in short, "the who, what, when, and where" supporting their fraud allegations. *Id.* at 178.

Plaintiffs also challenge the district court's denial of leave to amend their complaint, which we review for abuse of discretion. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). A district court does not abuse its discretion when denying leave to amend if, for example, amendment would be futile, the moving party has repeatedly failed to cure the deficiencies in its pleadings, or the opposing party would suffer undue prejudice. *See id.*

## III.    Discussion

On appeal, Plaintiffs argue that the district court erred in dismissing their RICO, FLSA, and state law claims and abused its discretion in denying their motion for leave to amend. We address each argument in turn.

### A.    RICO Claims

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). It allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a civil suit for treble damages. *Id.* § 1964(c). To state a claim under § 1962(c), a plaintiff must adequately plead that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).[2]

A RICO plaintiff must also plausibly allege that the RICO violation proximately caused the plaintiff's injuries. *See Holmes v. Secs. Inv. Prot.*

---

[2] Consistent with Rule 9(b), a RICO plaintiff alleging predicate acts of fraud (like Plaintiffs do here) must plead the circumstances of that fraud with particularity. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992).

*Corp.*, 503 U.S. 258, 268 (1992). The proximate causation standard in this context is not one of foreseeability; instead, the plaintiff must demonstrate that the alleged violation "led directly" to the injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10, 12 (2010) (plurality opinion). If some other conduct directly caused the harm, the plaintiff cannot sustain a RICO claim. *See Hemi Grp., LLC*, 559 U.S. at 11 (rejecting a RICO claim on proximate causation grounds because "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud").

Here, Plaintiffs' allegations, taken as true, do not support a conclusion that their underpayment injuries were directly caused by the Ramirezes' alleged fraud in obtaining the H-2B visas. Rather, their complaint shows that the injury was caused by the alleged underpayments which were not required by the alleged fraud. *See Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012). The Fourth Circuit in *Walters* addressed a similar situation where a set of domestic U.S. workers alleged that a company's managers filed false immigration forms that led to depressed wages for local workers—allegations the Fourth Circuit found insufficient precisely because other managerial decisions more directly impacted the workers' compensation:

> Although false attestations made by the hiring clerks are one step in a chain of events that ultimately may have resulted in the employment of unauthorized aliens . . . , the plaintiffs have not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiffs' wages, or on any other aspect of their compensation.

*Id.* at 444.[3]

_____

[3] It does not appear that prior panels of this court have had occasion to squarely address RICO proximate causation for this type of fact pattern: workers claiming that they

No. 19-50638

Similar reasoning applies here. Understating the type of work to be done may have supported obtaining the visas, but it was not the cause of underpayment; indeed, if one accepts the Plaintiffs' allegations, truthfulness would likely have resulted in a lack of visas, keeping Plaintiffs from being able to come to the United States in the first place.[4]  But, critically, Plaintiffs' reduced wages were several steps in the causal chain away from the transmission of fraudulent forms; nothing about the forms required underpayment. To even have the opportunity to underpay Plaintiffs, the Ramirezes had to submit fraudulent forms, obtain authorization, and bring the Plaintiffs to the United States for work. Only then could the Ramirezes actually underpay Plaintiffs. Importantly, the claim in this case is not just that the $13.72 per hour that the Ramirezes represented they would pay Plaintiffs was inadequate to cover the work done but that the Ramirezes did not even pay that amount properly. It is therefore clear that the Ramirezes' underpayment was not a necessary result of their alleged fraud— underpayment "in no sense required [them] to defraud" the Department of Labor. *Anza*, 547 U.S. at 459. Whatever hourly rate is stated to the Department of Labor is irrelevant if the employer is going to fail to pay what is owed, refuse to pay for overtime, or deduct inappropriate charges.

---

were underpaid after their employer succeeded in defrauding the government. We find the Fourth Circuit's analysis in *Walters* persuasive.

[4] The parties agree that, if the Ramirezes had truthfully represented that they sought truck drivers, the Department of Labor likely would not have provided the necessary certifications because the prevailing wage rate for truck drivers is high enough that domestic workers would be available to perform the job.

Accordingly, Plaintiffs failed to adequately plead proximate causation, and the district court properly dismissed their RICO claims.[5]

### B.    FLSA Claims

The FLSA claims are different.  The FLSA was "enacted in 1938 to protect all covered workers from substandard wages and oppressive working hours."  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016) (quotation omitted).  An employee can be covered by the FLSA if either the employee or the employing enterprise is "engaged in commerce or in the production of goods for commerce." *See id.*; *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).  Among other requirements, the statute requires employers to pay any covered employee at least a minimum wage of $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and to pay any covered employee at least one-and-one-half times the employee's regular wages when the employee works more than forty hours in a week, *id.* § 207(a)(1).  To state an FLSA claim, then, an employee must plead that the employee is covered by the FLSA and that the employer failed to pay the FLSA-required wages.

### 1.    Enterprise Coverage

The first FLSA issue on appeal is the enterprise coverage provision, which extends the FLSA's requirements to any enterprise that, as relevant here, either "has employees engaged in commerce or in the production of goods for commerce" (the "engaged-in clause") or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" (the "handling clause").  29 U.S.C § 203(s)(1)(A)(i).

---

[5] Because we conclude that Plaintiffs failed to adequately allege proximate causation, we do not address whether Plaintiffs adequately alleged a pattern of racketeering activity.

Plaintiffs contend that the Ramirezes and Black Magic trigger the handling clause "by employing more than 11 drivers and hauling water, sand, gravel[,] and construction and oilfield equipment both interstate and intrastate," as well as by "handling, selling, or otherwise working on goods or materials (such as heavy trucks, fuel and equipment) that have been moved in or produced for commerce by any person." The district court concluded that this assertion was conclusory. We disagree and conclude that Plaintiffs' allegation is sufficiently plausible to survive dismissal on this issue.

We have not had many occasions to discuss the handling clause, but the limited case law on point makes clear that it does not impose a strenuous pleading burden on plaintiffs. For example, addressing a prior version of the handling clause, we reasoned in *Brennan v. Greene's Propane Gas Service* that, unlike the engaged-in clause, the handling clause's requirements are in the past tense—that is, the "employees' handling, selling, or otherwise working" must be "on goods that *have been* moved in or *produced* for commerce by any person." 479 F.2d 1027, 1030 (5th Cir. 1973). That phrasing, we concluded, means that "[t]here is no requirement of continuity in the present." *Id.* Instead, "the legislation was designed to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce." *Id.* (quotation omitted).

*Brennan*'s reasoning has generated similar holdings in our sister circuits. For instance, the Eleventh Circuit relied on *Brennan* in applying the handling clause to items that travelled interstate prior to sale in *Polycarpe v. E&S Landscaping Service*, 616 F.3d 1217, 1221 (11th Cir. 2010). In particular, the Eleventh Circuit rejected the alternative "'coming to rest' doctrine," under which "interstate goods or materials can lose their interstate quality if the items have already come to rest within a state before intrastate purchase by a business." *Id.* In turn, the Sixth Circuit has cited *Polycarpe* in applying the handling clause to a logging company whose employees used logging

equipment that had been moved in commerce. *See Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 845, 848 (6th Cir. 2019). As these cases make clear, an employer can trigger enterprise coverage if its employees handle items that had travelled in interstate commerce at some point in the past, even if the act of handling those items does not amount to engaging in commerce in the present.

The Ramirezes argue that Plaintiffs must nonetheless show that their work directly affected commerce. But the Ramirezes rely primarily on two summary judgment opinions implicating the engaged-in clause—not the handling clause—for that proposition. *See Williams v. Henagan*, 595 F.3d 610 (5th Cir. 2010) (per curiam); *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828 (5th Cir. 2007) (per curiam).[6] Those cases do not compel dismissal of Plaintiffs' claims. As we have discussed, the handling clause does not require the same sort of present-tense continuity that the Ramirezes suggest. *See Brennan*, 479 F.2d at 1030. That means that, unlike the *Williams* and *Sobrinio* plaintiffs, Plaintiffs here do not need to allege that their actual work activities directly affected interstate commerce, merely that the goods or materials they handled had previously come into the state from elsewhere. The Ramirezes' argument also conflates Plaintiffs' ultimate burden of proof with what must be plausibly alleged. Indeed, *Williams* and *Sobrinio* were

---

[6] In *Williams*, we concluded that a police chief was entitled to summary judgment on an inmate's FLSA claims because the inmate, who waxed church floors, worked at a city railroad festival, cooked for local fundraisers, counted burnt-out streetlamps, worked for the chief's bounce-castle rental and grass-cutting businesses, and traveled with a mayor from Louisiana to Texas to transport the mayor's furniture, performed only "occasional odd jobs" and was not actively "engaged in commerce." 595 F.3d at 613–14, 621. In *Sobrinio*, we concluded that a motel was entitled to summary judgment on an employee's FLSA claims because the employee, who "acted as a janitor, security guard and a driver for the motel's guests, who were often from out of town," but "did not drive them to or from any airport or other interstate transportation center," was not "engaged in interstate commerce." 474 F.3d at 829–30.

resolved at summary judgment, where the plaintiffs were required to demonstrate, with evidence showing at least a genuine dispute of material fact, a relationship between their work and interstate commerce. *See Williams*, 595 at 615. Here, Plaintiffs need only plausibly allege that they handled goods or materials that had at some point travelled interstate. *See Twombly*, 550 U.S. at 570.

We conclude that Plaintiffs have done so. They identified water, sand, gravel, construction equipment, oilfield equipment, trucks, and fuel as goods or materials that had potentially been moved in commerce before being handled by Black Magic and its employees. At least some of these items are plausibly goods or materials: they are all items one could plausibly conclude are used in or produced during construction and trucking work.[7] It is also plausible that some or all of these items had travelled interstate at some point in their life cycle. Texas is a large state with considerable industrial capacity, but it does not stretch the definition of plausible for Plaintiffs to allege that at least some of the raw materials and machinery that they handled came from beyond Texas's borders. Importantly, Plaintiffs will have to provide proof of these allegations at the summary judgment or trial stage (after they have had a chance to conduct discovery), but they are not required to provide further details than they have at this stage.

---

[7] We note that the distinction between "goods" and "materials" in the handling clause has been the subject of considerable judicial discussion. *See Timberline*, 925 F.3d at 845–48 (collecting and summarizing cases); *Polycarpe*, 616 F.3d at 1223–25 (examining dictionary sources, legislative history, an agency opinion letter, and a law review article on the distinction). Because the parties do not suggest such a distinction makes any difference here, we need not wade into those waters. We merely conclude that many of the items Plaintiffs identify plausibly constitute either goods or materials.

### 2.    Failure to Pay

Plaintiffs also adequately pleaded that they lost wages as a result of the alleged FLSA violations.  Plaintiffs claimed that they were paid less than $18 per hour for overtime, less than one-and-one-half times their contractually agreed upon hourly wage.  Plaintiffs further alleged that the Ramirezes effectively paid Plaintiffs less than the federal minimum wage by making impermissible deductions from their paychecks.  They also identified that, for "several pay periods during late August and September of 2015," they "worked 50 to 80 or more hours a week" but "were not paid fully or paid at all."  The district court concluded that these allegations were insufficient to establish the amount of compensation and overtime Plaintiffs were due.

We conclude that Plaintiffs' allegations are sufficient at the pleadings stage.  The allegations put the Ramirezes on notice of minimum and overtime wage claims for specific time periods and set forth a plausible claim for relief. *See Twombly*, 550 U.S. at 555.  Rule 12(b)(6) "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The district court required Plaintiffs to do more than that—essentially making them prove (rather than plausibly allege) that the Ramirezes "violated the FLSA's overtime wage requirements" and "the amount of overtime compensation due." *See Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).  Such proof is unnecessary at this point; in fact, even past the pleading stage, when an employer fails to keep proper records, "the remedial nature of the FLSA and the great public policy which it embodies militate against making the burden of proving uncompensated work an impossible hurdle for the employee." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (cleaned up). Plaintiffs' allegations regarding the hours worked and approximate wages paid during certain time periods were sufficient to meet the pleading requirements.

As Plaintiffs have adequately pleaded both enterprise coverage and underpayment of wages, we reverse the district court's dismissal of their FLSA claims. Additionally, because Plaintiffs adequately pleaded at least one federal claim, we conclude that the district court's dismissal of their state law claims should be vacated so that the district court can assess the exercise of supplemental jurisdiction under the current pleading situation.[8]

## C.    Leave to Amend

Finally, we turn to Plaintiffs' challenge to the district court's denial of their motion for leave to amend their complaint. Plaintiffs sought such leave more than five weeks after the district court's order dismissing their complaint for failure to state a claim. The district court reasoned that their motion was untimely and noted the numerous opportunities Plaintiffs had to fix their pleading deficiencies. The district court explained that, among other opportunities, Plaintiffs could have raised any new matters prior to dismissal. The district court also concluded that further amendment would be futile.

We conclude that the district court did not abuse its discretion in denying Plaintiffs' motion for leave to amend. Although Plaintiffs amended their complaint only once, they did not explain what would be accomplished by further amendment in their second request for leave to amend. That deficiency is exacerbated by the fact that Plaintiffs waited more than five weeks after the district court's dismissal order to ask for leave the second time. Plaintiffs' failure to seriously pursue amendment until well after

---

[8] The vacatur of the district court's ruling on this point is solely because the district court's dismissal decision was premised on the now-changed ground that it had dismissed all of Plaintiffs' federal claims. *See* 28 U.S.C. § 1367(c)(3). We do not address any other possible bases for declining supplemental jurisdiction; those topics may be raised, as appropriate, on remand for evaluation by the district court in the first instance.

dismissal—a combination of failure to cure and delay—more than justified the district court's denial of their motion.

Additionally, amendment was futile as to the RICO claims. As we explained above, Plaintiffs' injury was, on its face, not proximately caused by the alleged fraud. Amendment was also unnecessary on Plaintiffs' FLSA claims, albeit for a different reason: Plaintiffs' FLSA claims were adequately pleaded in the first place. The district court thus did not abuse its discretion by denying Plaintiffs leave to amend their complaint.

## IV.     Conclusion

Plaintiffs' RICO claims fail because they did not adequately plead that their injuries were proximately caused by the Ramirezes' alleged fraud. But their FLSA claims were improperly dismissed; Plaintiffs plausibly alleged that the goods and materials they handled had travelled in interstate commerce and that they lost wages as a result of the Ramirezes' conduct. Because their FLSA claim were plausibly pleaded, we remand Plaintiffs' state law claims for new consideration of supplemental jurisdiction. Finally, the district court did not abuse its discretion in denying Plaintiffs' motion to amend their complaint.

Accordingly, we AFFIRM the district court's dismissal of Plaintiffs' RICO claims and the district court's denial of Plaintiffs' motion for leave to amend, REVERSE the district court's dismissal of Plaintiffs' FLSA claims, VACATE the district court's dismissal of the state law claims, and REMAND to the district court for further proceedings.