# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2021

Lyle W. Cayce
Clerk

No. 19-50411

Jonathan Hitt,

*Plaintiff—Appellant*,

*versus*

Marsha McLane, In her Official and Individual Capacity as Executive Director for Texas Civil Commitment Office; Brian Thomas, In his Official and Individual Capacity as Facility Director of the Texas Civil Commitment Center; Greg Hamilton, In his Official and Individual Capacity as Sheriff of Travis County, Texas; Travis County Sheriff's Office, In their Official and Individual Capacity; Correct Care Recovery Solutions, L.L.C.,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-289

---

Before Wiener, Dennis, and Duncan, *Circuit Judges*.

Per Curiam:*

This case concerns a sexually violent predator ("SVP") who alleges that he was unlawfully searched and subsequently detained because he was in an unauthorized relationship with his supervisor and chaperone. There are numerous claims here—both personal and official capacity claims—which we analyze separately. We reverse and remand, however, because of procedural errors in the district court's order, and we direct the district court to consider the merits of all remaining claims, including any properly raised defenses based on qualified immunity.

## I. Background

The following allegations are taken from the amended complaint and attached affidavit, which was referenced in and attached to the amended complaint.[1] Plaintiff-Appellant Jonathan Hitt is a civilly committed SVP under Texas law.[2] During Hitt's commitment period, Defendant-Appellee Marsha McLane, the Executive Director for the Texas Civil Commitment Office ("TCCO"), "unlawfully arrested and confined" Hitt to the Texas Civil Commitment Center ("TCCC").

Prior to his confinement, Hitt had been a success story of the statutory commitment program: He lived on his own, was gainfully employed, paid

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (noting that documents attached to a motion to dismiss are to be considered part of the pleadings for purposes of Rule 12(b)(6)).

[2] *See* Tex. Health & Safety Code Ann. § 841.001 (West 2017); *see also In re Commitment of Hitt*, 2011 WL 5988024, at *1 (Tex. App. Dec. 1, 2011). The Texas legislature has found that SVPs are "extremely dangerous" and "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities," which makes them "likely to engage in repeated predatory acts of sexual violence." Health & Safety § 841.001.

property and income taxes, and held insurance. Then he met Maria Lopez, his employment supervisor, and began a romantic relationship with her. The Office of Violent Sex Offender Management had approved Lopez as a "collateral contact" for Hitt. The couple would go on dates (with Lopez as Hitt's chaperone) and were intimate (kissing and hugging); they also discussed the importance of not allowing contact between Hitt and Lopez's teenage daughter.

One of Hitt's case managers visited Hitt's residence just after he and Lopez had been intimate. The case manager expressed to Hitt her favorable opinion of Lopez, but she and another case manager then visited Hitt at work. They told him that he and Lopez could not have sexual contact without Lopez's permission. The next day, however, the case managers informed Hitt that McLane had ordered that all contact between Hitt and Lopez cease pending investigation.

Hitt was summoned to the TCCO office where McLane met him for the first time. McLane began the meeting by threatening to incarcerate Hitt "for having a secretive relationship." Hit was given a polygraph examination about his relationship with Lopez and failed it. As he exited the polygraph examination room, Hitt was met by another case manager and five men, one of whom was a uniformed Texas Department of Public Safety ("DPS") officer. The case manager told Hitt that "it was time to take a little ride because [Hitt] had failed [his] polygraph exam." When Hitt walked outside with her, he saw that his car had been blocked by the DPS officer. A man in plain clothes warned Hitt not to resist, and multiple men formed a perimeter around Hitt.

Hitt was taken to the Travis County Correctional Complex where he was processed and locked up. He was then transferred to TCCC in a prison-type van. TCCC "is a high security prison inside double razor wire topped

No. 19-50411

chain-link fencing . . ., including fenced in walkways, equipped with security cameras and motion detectors."

McLane visited Hitt at TCCC and informed him that "she did not even have a policy authorizing her to arrest or detain a person, and thereafter have them locked up in total confinement at the TCCC." Hitt nevertheless was not permitted to leave on his own, contact an attorney, or confer with anyone associated with law enforcement as to why he was confined.

Hitt claims that McLane is "not a mental health professional" qualified to treat his behavioral abnormality. He alleges that McLane ordered the polygraph examination after telling him to admit to having sexual contact with Lopez. Hitt is still confined at TCCC and is required to wear and pay for a Global Positioning Satellite ("GPS") monitor that he wears around his ankle.

## II. Procedural History

Proceeding *pro se*, Hitt instituted this § 1983 action against McLane in her personal and official capacities and other Defendants-Appellees,[3] claiming violations of, *inter alia*, the Fourth and Fourteenth Amendments. McLane filed a motion to partially dismiss Hitt's unreasonable seizure and procedural due process claims. Her motion did not refer to Hitt's unreasonable search claim. McLane argued generally that qualified immunity prevented claims against her in her personal capacity. In her reply brief, McLane added that she sought to dismiss Hitt's substantive due process claims. Although she had three opportunities to do so (once in the motion to dismiss, once in the reply brief, and once in her response to Hitt's objection

---

[3] Hitt only appeals the personal and official capacity claims against McLane.

to a magistrate judge's report and recommendation), McLane never stated that she sought dismissal of Hitt's unreasonable search claim.

The magistrate judge entered a report and recommendation on the motion to partially dismiss. The district court accepted those recommendations in part, dismissing Hitt's unreasonable search and seizure and procedural due process claims in McLane's personal capacity, and dismissing his substantive due process claims in McLane's personal and official capacity. The court scheduled a bench trial over the remaining claims. After the bench trial, the district court ruled for Hitt on his procedural due process claim against McLane in her official capacity and ruled for McLane on Hitt's unreasonable search and seizure claim against McLane in her official capacity.

Hitt timely appeals. He first appeals the court's ruling on the motion to partially dismiss, appealing the dismissal of:

1. The unreasonable search claim against McLane in her personal capacity ("Claim 1");
2. The unreasonable seizure and procedural due process claims against McLane in her personal capacity ("Claims 2 and 3"); and
3. The substantive due process claims against McLane in her personal and official capacities ("Claims 4 and 5").

Hitt also appeals the order issued after the bench trial, *viz.*,

4. The unreasonable search and seizure claims against McLane in her official capacity ("Claims 6 and 7").

No. 19-50411

### III. Standard of Review

We apply different standards of review for appeals of claims dismissed at the Rule 12(b)(6) stage and those ruled on after a bench trial.[4] As for the motion to partially dismiss, our review is *de novo*, and we take all well-pleaded allegations from the amended complaint as true.[5] Because Hitt was a *pro se* plaintiff at the time he filed his amended complaint, we construe his pleadings liberally.[6]

With regard to the appeal from the bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*.[7] The district court dismissed Claims 6 and 7 for lack of Article III standing, so our review of that ruling is *de novo*.[8]

### IV. Analysis

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'"[9] A § 1983

---

[4] *See*, *e.g.*, *DeMoss v. Crain*, 636 F.3d 145, 149, 152 (5th Cir. 2011) (applying motion to dismiss standard of review to certain claims and bench trial standard of review to other claims).

[5] *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020).

[6] *Brunson v. Nichols*, 875 F.3d 275, 277 (5th Cir. 2017).

[7] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020).

[8] *El Paso Cnty. v. Trump*, 982 F.3d 332, 337 (5th Cir. 2020).

[9] *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983).

lawsuit may be brought against state actors in their personal or official capacity.[10]

"In a personal-capacity suit, 'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'"[11] Qualified immunity is a defense to a personal capacity suit.[12] "The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[13]

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[14] "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983."[15] To sufficiently plead an official capacity claim under § 1983, a plaintiff must show that "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[16]

### A. Claim 1 – Unreasonable Search (Personal Capacity)

As to Hitt's unreasonable search claim against McLane in her personal capacity, the district court held that Hitt had not rebutted qualified

---

[10] *Id.* at 395.

[11] *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[12] *Id.*

[13] *Id.* (quoting *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)).

[14] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

[15] *Id.*

[16] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

immunity, so it dismissed that claim. Curiously, the district court did not dismiss the unreasonable search claim against McLane in her official capacity, noting that McLane never moved to dismiss that claim. Hitt responds that McLane never moved to dismiss the unreasonable search claims—either the personal or official capacity claim—and that the personal capacity claim should not have been dismissed. He asserts that he was never given notice that the personal capacity claim would be dismissed. McLane responds by citing the general law of qualified immunity and asserts in a footnote that she sufficiently pleaded qualified immunity.

We agree with Hitt. McLane's motion referred to the unreasonable seizure and procedural due process claims, and she subsequently clarified that she was also moving to dismiss the substantive due process claims when the magistrate judge asked her to specify which claims she was moving to dismiss. Absent from McLane's motion was any specific reference to Hitt's unreasonable search claim. Thus, Hitt had no notice that the court might dismiss it and was deprived of a chance to offer an argument in response. We have held that "district courts should not dismiss claims *sua sponte* without prior notice and opportunity to respond."[17] The district court erred reversibly by *sua sponte* dismissing the unreasonable search claim against McLane in her personal capacity. We therefore remand for the district court to consider it in the first instance.

### B. Claims 2 and 3 – Unreasonable Seizure and Procedural Due Process (Personal Capacity)

We hold that McLane's qualified immunity defense was properly pleaded as to these claims, but that the district court erred in concluding that

---

[17] *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)).

Hitt had not sufficiently pleaded personal involvement. We leave open the question whether McLane's conduct violated clearly established law because the district court failed to address that issue, and we are not a court of first impression.[18]

Personal involvement is an "essential element" of a § 1983 lawsuit.[19] In addition, when a defendant sufficiently pleads qualified immunity, as McLane did to these two claims, a plaintiff must show that "the official's allegedly wrongful conduct violated clearly established law."[20]

With regard to the alleged unreasonable seizure, Hitt adequately pleaded McLane's personal involvement. McLane required Hitt "to remain in the confines of his property" for most of the day when he was residing there. After the confinement incident, Hitt was "being forced by . . . McLane to reside at the TCCC."

Regarding the alleged procedural due process violation, we also conclude that Hitt adequately pleaded McLane's personal involvement. McLane ordered Hitt to take a polygraph examination after he refused to admit that he had engaged in sexual contact with Lopez. It was Hitt's failure of the polygraph examination that led to his total confinement. McLane never gave Hitt a hearing. Rather, he was never "permitted an opportunity to leave [TCCC] on [his] own, contact an attorney, or confer with anyone associated with law enforcement, as to why [he] was being unlawfully arrested and confined."

---

[18] *See Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 183 (5th Cir. 2016).

[19] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[20] *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

No. 19-50411

## C. Claims 4 and 5 – Substantive Due Process (Personal and Official Capacities)

Hitt alleged that McLane violated his substantive due process rights in two ways. He first contends that McLane's decision to transfer him from community placement to TCCC and keep him there were not treatment decisions based on professional judgment. He then argues that McLane's policy of requiring him to wear and pay for GPS monitoring while restricted to and confined within TCCC violated his substantive due process rights. The district court dismissed both claims, concluding that "Hitt does not explain how the alleged deprivation of [his] liberty interest might give rise to a substantive due process claim independent of [his] procedural due process claim." This was error.

Hitt's substantive due process claims implicate "the right to be free of state-occasioned damage to a person's bodily integrity" as protected by the Due Process Clause of the Fourteenth Amendment.[21] State actors violate this right when their conduct is "arbitrary, or conscience shocking, in a constitutional sense."[22] Civil committees like Hitt have substantive due process rights independent of their procedural due process rights. In relation to the first substantive due process claim, the United States Supreme Court has stated that "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which

---

[21] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc) (alteration omitted).

[22] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).

persons are committed."[23] With regard to Hitt's second substantive due process claim, the Supreme Court has confirmed that it is the substantive component of the Due Process Clause that is implicated in civil committees' right to adequate conditions and durations of confinement.[24]

Hitt alleged both substantive and procedural due process violations. The district court erred by grouping these claims together.[25] On remand, the district court must separately consider the merits of each of these claims, including McLane's defense of qualified immunity. We express no opinion on whether McLane's conduct violated Hitt's substantive due process rights and, if so, whether she did so in violation of clearly established law.

D. Claims 6 and 7 – Unreasonable Search and Seizure (Official Capacity)

After a bench trial, the district court ruled for McLane on the Fourth Amendment unreasonable search and seizure claims against her in her official capacity, holding that Hitt lacked standing to assert these claims. The court ruled that Hitt sufficiently alleged an injury-in-fact and traceability, but that he did not prove that his injuries were redressable. This too was error.

---

[23] *Seling v. Young*, 531 U.S. 250, 265 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *see Youngberg v. Romeo*, 457 U.S. 307, 324 (1982); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

[24] *See Foucha*, 504 U.S. at 80 (noting that substantive due process protects "freedom from bodily restraint" without regard for the "fairness of the procedures used to implement" the government's actions); *see also Youngberg*, 457 U.S. at 320 (noting that it is the "substantive right protected by the Due Process Clause" that a court must balance to ensure that the liberty interest of the committee is not infringed upon).

[25] The district court also erred by accepting the magistrate judge's report and recommendation that the substantive due process claims be dismissed as being only as-applied challenges to the Texas SVP Act. Hitt did make facial and as-applied constitutional challenges to the Act. However, he made those challenges "in the alternative" to his other claims. Hitt independently claimed that his substantive due process rights were violated.

No. 19-50411

Article III standing requires a traceable injury-in-fact that is redressable, *i.e.*, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[26] The trial evidence shows that Hitt's injuries are redressable. First, he will likely be released to community placement soon, so a favorable ruling by the court would ensure that, upon release, Hitt would not be subjected to the same alleged unconstitutional conduct. Second, the trial evidence shows that Hitt is likely to be subjected to the same alleged unconstitutional searches after his release—if in fact these searches violate the Fourth Amendment. McLane confirmed that TCCO gives no notice before it conducts searches. She also confirmed that TCCO policy does not constrain how, where, or when a search may take place. McLane testified that "we're always suspecting something with the [SVPs]" because of "[t]he history of their behavior and how they hide things and they're sneaky." These searches generally occur "late at night." Third, the trial evidence shows that these allegedly unreasonable seizures are likely to occur again and are therefore redressable by a court order finding that the seizures are unlawful. McLane confirmed that, in her view, she holds "unlimited authority to designate [the place SVPs reside] unless they challenge it." The trial testimony also confirms that TCCO does not give notice before it moves an SVP to "a more restrictive setting." McLane is "responsible for the increase in restrictions." She agreed that her authority is "unlimited."

In sum, a favorable ruling from the district court would likely redress the alleged unconstitutional search and seizure because it would prevent McLane from violating Hitt's constitutional rights.[27] We express no opinion

---

[26] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43, 96 (1976)).

[27] *See Lujan*, 504 U.S. at 560.

No. 19-50411

on the merits of these claims, leaving it to the district court, on remand, to decide the merits in the first instance.[28]

## V. Conclusion

For the foregoing reasons, the district court's judgment as to all appealed claims is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[28] Hitt also appeals the district court's order denying him leave to amend his complaint. He contends that he should have been allowed to plead additional facts showing McLane's personal involvement in the alleged procedural due process violation. We need not decide this issue, however, because we hold that Hitt adequately alleged a procedural due process violation against McLane in her personal capacity.