# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2025

Lyle W. Cayce
Clerk

No. 24-40434

Albert Mascorro Flores; Christina Vargas; Martha Ramos; Juan V. Cortez, III; Christina Cuevas; Leticia Arreola; Arianna Rodriguez; Nereyda Garza; Nancy Silva,

*Plaintiffs—Appellants*,

*versus*

Amazing Grace Primary Home Care, L.L.C.; Javier Cavazos; Maria Carmen Cavazos,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:23-CV-54

_____

Before Graves, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Appellants are nine individuals who asserted Fair Labor Standards Act ("FLSA") claims against their employer, Appellee Amazing Grace Primary Home Care, L.L.C. ("Amazing Grace"), and its officers, Appellees

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40434

Javier Cavazos and Maria Carmen Cavazos. The district court dismissed the FLSA claims because it determined that Amazing Grace was not an entity covered by the FLSA. The district court also denied Appellants' motion for leave to file a second amended complaint because it determined that allowing amendment would be futile, result in undue delay, and reward repeated failure by Appellants to cure previous deficiencies. Because we find that Amazing Grace falls within the FLSA's enterprise coverage under the facts alleged and the district court abused its discretion in denying the motion for leave to amend, we REVERSE and REMAND.

## BACKGROUND

Amazing Grace is a home health agency that employs health care workers to perform personal care and home services for beneficiaries under state and federal programs. In 2020 and 2021, Appellants worked for Amazing Grace as electronic visit verification ("EVV") system clerks and primary home care ("PHC") supervisors. In these roles, their responsibilities included carrying out administrative tasks such as scheduling, billing, comprehensive reporting, and visit verification by the health care providers. Due to the COVID-19 pandemic, Appellants also conducted interviews regarding patients' and providers' COVID-19 symptoms and entered the data into the EVV system and Excel spreadsheets. Appellants allege that they did not and could not work a traditional 40-hour week, and that all but one of them worked over 60 hours per week on average.

The Department of Labor investigated Amazing Grace in 2021 and subsequently advised Appellants that it had recovered "back wages and liquidated damages or other compensation" due to them under the FLSA.[1]

---

[1] Appellees assert that the Department of Labor investigation specifically concerned the health care providers Amazing Grace employed, not Appellants. However, as we are evaluating the grant of a motion to dismiss, and Appellees have not provided any

No. 24-40434

However, instead of accepting recovery from the investigation, Appellants filed this lawsuit on March 31, 2023, alleging that Appellees failed to pay them the minimum wage and overtime.

Appellants served all Appellees by April 15, 2023, but Appellees did not respond to the complaint within 21 days or agree to waive service. *See* Fed. R. Civ. P. 12(a). On May 26, 2023, Appellants moved for a default judgment, and Appellees responded 3 days later by requesting an extension of time and moving to dismiss the complaint. The district court granted the motion for extension of time. The district court then granted Appellants' motion for leave to file a first amended complaint after Appellees chose not to respond to the motion. On July 31, 2023, Appellees then filed their second motion to dismiss. On September 12, 2023, Appellants filed a motion for leave to file a second amended complaint, as well as a response to the second motion to dismiss. The proposed second amended complaint added the following additional allegations, in relevant part:

> At all times relevant to this lawsuit, Amazing Grace Primary Home Care, LLC has employed two or more employees who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include vehicles, fuel, computers, computer software, phones and/or cell phones, and other office supplies/materials used in connection with Amazing Grace Primary Home Care, LLC's business. Such goods and materials were used to handle—among other things—patient documentation, the scheduling of patient appointments, the

---

documents pertaining to the investigation even though the investigation was referenced in the complaint and arguably central to Appellants' complaint, we assume Appellants' characterization of the investigation is true. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

performance of data entry tasks, and the provision of medical services.

At all relevant times, Amazing Grace Primary Home Care, LLC has employed two or more employees who regularly used computers, telephones, and software—which were produced in other states—to make appointments and charge customers for Amazing Grace Primary Home Care, LLC's services.

At all relevant times, Amazing Grace Primary Home Care, LLC has employed two or more employees who, in furtherance of their job duties, were required to (1) operate company vehicles—which were manufactured out of state—on the roadways and highways of Cameron County and Hidalgo County; and (2) carry medical supplies, tools, or equipment that was manufactured out of state.

At all times relevant to this suit, Amazing Grace Primary Home Care, LLC has employed two or more employees who, as office staff, handled documentation and communications going to and from out-of-state Health Maintenance Organizations (HMOs), insurers, and federal agencies as part of their daily work.

On information and belief, at all times relevant to this lawsuit, Amazing Grace has had annual gross volume of sales made or business done in excess of $500,000.00.

On February 23, 2024, the district court denied Appellants' motion for leave to file a second amended complaint and dismissed the FLSA claims. Appellants then filed this appeal, challenging the district court's resolution of these motions.

## STANDARD OF REVIEW

We review orders granting Rule 12(b)(6) motions *de novo*. *McKay v. La Croix*, 117 F.4th 741, 746 (5th Cir. 2024). "In doing so, we must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the

nonmoving party." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (citation omitted) (internal quotation marks omitted). But we "do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions." *McKay*, 117 F.4th at 746. The ultimate question is whether the plaintiff has pleaded sufficient factual allegations that, accepted as true, have facial plausibility, meaning the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We review a district court's order denying leave to amend for abuse of discretion. *North Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). Because Rule 15(a) directs the district court to "freely give leave when justice so requires," the district court needs a "substantial reason" to deny leave to amend. *Id.* (citations omitted). For instance, a district court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (citation omitted).

## DISCUSSION

Because the district court's decision to dismiss Appellants' FLSA claims is interrelated with its denial of leave to amend, we discuss both motions in conjunction. We begin with an overview of FLSA coverage.

"The FLSA guarantees overtime pay" and a minimum wage "to employees engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (quoting 29 U.S.C. § 207(a)(1));

*see also* 29 U.S.C. § 206(a)(1). Only "enterprise coverage" is at issue in this appeal.[2]

> Enterprise coverage applies, in relevant part, to an enterprise that:
>
> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A).

The first prong of enterprise coverage can be satisfied either by meeting the "engaged-in clause" or the "handling clause." *See Molina-Aranda*, 983 F.3d at 786. Appellants argue that the handling clause applies because Amazing Grace has employees handling materials that have moved in commerce.

The handling clause "does not impose a strenuous pleading burden on plaintiffs." *Molina-Aranda*, 983 F.3d at 786. Unlike the engaged-in clause, the handling clause's "tense is in the past," meaning "[t]here is no requirement of continuity in the present." *Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1030 (5th Cir. 1973) (addressing a prior version of the handling clause); *see Molina-Aranda*, 983 F.3d at 786 (applying *Brennan*'s

---

[2] The parties do not dispute that Appellees sufficiently alleged that Amazing Grace failed to pay overtime or minimum wage, or that Amazing Grace generally qualifies as an "enterprise" under the terms of the statute. *See Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 786 (5th Cir. 2020) ("To state an FLSA claim, then, an employee must plead that the employee is covered by the FLSA and that the employer failed to pay the FLSA-required wages."); 29 U.S.C. § 203(r)(1).

reasoning to the present version of the handling clause). So long as two or more employees handle goods or materials "that travelled in interstate commerce at some point in the past, even if the act of handling those items does not amount to engaging in commerce in the present," the employer falls under the purview of the handling clause. *Molina-Aranda*, 983 F.3d at 786-87; *see also Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 500-01 (5th Cir. 1975).

For example, in *Molina-Aranda*, we reversed a district court's dismissal of a group of truck drivers/construction workers' FLSA claims where they had identified "water, sand, gravel, construction equipment, oilfield equipment, trucks, and fuel as goods or materials that had been moved in commerce before being handled" by them. *Id.* at 787. There, we explained that these were "all items one could plausibly conclude are used in or produced during construction and trucking work," and it was plausible that the items had moved interstate at some point. *Id.*

However, in *Molina-Aranda*, one of our few cases addressing the handling clause, we did not specifically address two issues pertinent to this appeal: what constitutes "materials" and what constitutes "handling" under the handling clause. *See id.* at 787 n.7 (explaining that while the distinction between "goods" and "materials" had been considerably discussed by other courts, the distinction was not significant for that case because many of the items identified by the plaintiffs were either goods or materials). However, we did favorably discuss two out-of-circuit cases that provide a greater discussion: *Polycarpe v. E&S Landscaping Serv.*, 616 F.3d 1217 (11th Cir. 2010), and *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838 (6th Cir. 2019). *See Molina-Aranda*, 983 F.3d at 786.

No. 24-40434

In *Polycarpe*, the Eleventh Circuit explained that while the FLSA expressly defines "goods," it does not define "materials." 616 F.3d at 1222.[3] To avoid defining "materials" in a way that would overlap with the definition of "goods," and giving "materials" its ordinary meaning, the Eleventh Circuit determined that "'materials' in the FLSA means tools or other articles necessary for doing or making something." *Id.* at 1224 (citing *Webster's Third New Int'l Dictionary: Unabridged* 1392 (1993)). The Eleventh Circuit then explained that the FLSA's legislative history and the Department of Labor's view of the statute confirmed its interpretation. *Id.* at 1224-25 (first citing S.Rep. No. 93–690, at 17 (1974) (broadening enterprise coverage and using as an example of "materials" the soap used by a laundry); then citing Op. Letter, Fair Labor Standards Act (Dep't of Labor Jan. 22, 1997), 1997 WL 958726 (finding that a fast food enterprise could fall under the handling clause due to commercial use of interstate "coffee served, cleaning supplies utilized, cooking equipment (ranges[,] fryers, grills) operated, etc.")).

But the Eleventh Circuit did not stop there. Rather, in applying the definition of "goods" or "materials" to a particular circumstance, the Eleventh Circuit identified two considerations: "1) whether, *in the context of its use*, the item fits within the ordinary definition of 'materials' under the FLSA and 2) whether the item is being used commercially in the employer's business." *Id.* at 1225-26. As to the second consideration, the Eleventh Circuit explained that the material "must have a significant connection with the employer's activity; the business may not somehow internally and

_____

[3] "'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).

incidentally consume the item." *Id.* at 1226. The second consideration is compelled because the handling clause only covers goods and materials that the enterprise is "handling, selling, or otherwise working on." *Id.* at 1226 (citation omitted). The ordinary meaning of "handling" in the business context is to "have or cause to pass through one's hands in commercial transactions" or "to trade in: engage in the buying, selling, or distributing of (a commodity)." *Id.* (quoting *Webster's Third New Int'l Dictionary: Unabridged* 1027 (1993)).

By way of example, the Eleventh Circuit explained that china dinner plates could be a "good," a "material," or neither depending on the context and use in the business. The employees of a department store selling china dinner plates are handing "goods"; a caterer serving meals on china dinner plates is handling "materials"; an accounting office that has decorative china dinner plates on the wall is doing neither. *Id.*

The Sixth Circuit found *Polycarpe* persuasive and adopted its definition of "handling materials." *Timberline*, 925 F.3d at 848 (concluding that a logging company's employees handled materials when they used logging and harvesting equipment that had been moved interstate). So do we. The *Polycarpe* definition gives appropriate breadth to the remedial nature of the FLSA, while also according with the plain meaning of the statutory term. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016) (stating that the FLSA was "enacted in 1938 to 'protect all covered workers from substandard wages and oppressive working hours'" (citation omitted)). We therefore find it to be an appropriate reading of the handling clause.

Now to its application. Appellants contend that their first amended complaint satisfies the handling clause because it alleged that they, as EVV clerks and PHC supervisors, used computer software and cellular phones for data entry as an integral part of Amazing Grace's business. Appellants rely

on a few district court cases in this circuit that have found a home health company satisfied the handling clause under similar theories. *See Blundell v. Lassiter*, No. 3:17-cv-1990, 2018 WL 6738046, at *10 (N.D. Tex. May 21, 2018) (finding a home health company satisfied the handling clause when its office staff handled computers, computer software, and phones that had previously moved through commerce for scheduling appointments and other data entry tasks); *Defrese-Reese v. Healthy Minds, Inc.*, No. 18-1134, 2020 WL 4457773, at *6 (W.D. La. Aug. 3, 2020) ("At the least, the phones, computers, and printers in Defendants' offices meet the definition of 'materials' that have moved in interstate commerce and which are used in connection with the business of providing care for the disabled persons in Healthy Minds, Inc. and Healthy Minds, LLC's care."); *see also Demaree v. Oriental Med. Clinic, LLC*, A-20-CV-443, 2021 WL 107213, at *4 (W.D. Tex. Jan. 12, 2021) (magistrate judge report and recommendation), *aff'd*, 2021 WL 8053495 (W.D. Tex. Jan. 27, 2021) ("Demaree pleads that he and other OMC front desk employees used computers, telephones, and credit card machines produced in other states, to make appointments and charge customers for OMC's services. These items, necessary for running OMC's business, qualify as 'materials' sufficient to bring Defendants within FLSA enterprise coverage under the handling clause.").

Appellees argue that finding enterprise coverage under the handling clause simply because Appellants used common office equipment (e.g., phones, computers) would result in virtually every business being subjected to the FLSA, a result inconsistent with the statutory text and Congress' intent. The Sixth Circuit has acknowledged this possible conflict, reasoning that 1) the Department of Labor has never sought to enforce the FLSA against a business merely because it uses office supplies and 2) under *Polycarpe*'s reading, incidental use is not sufficient for employees to handle materials. *Timberline*, 925 F.3d at 849.

Whether Appellants' regular use of phones and computers, in facilitating Amazing Grace's home health care business, satisfies the handling clause is a close question. However, if we consider Appellants' allegations in their second amended complaint, it is a question we need not answer. The second amended complaint alleges that Amazing Grace's providers, of which there were at least two, operated company vehicles and carried/used medical supplies that had been produced out of state. It seems fairly straightforward that handling interstate vehicles and medical supplies is fundamental to a business providing in-home medical services. It is also of no moment that the providers, rather than Appellants, handled these materials, as enterprise coverage focuses on the employer. *See Polycarpe*, 616 F.3d at 1221 (explaining that the handling clause centers on "whether Defendant employers had employees (not necessarily Plaintiffs specifically)" handling materials that have been moved in commerce); *Dunlop*, 516 F.2d at 500. Accordingly, at least based on the second amended complaint, Appellants' factual allegations satisfy the handling clause.

We also find that the allegations from Appellants' second amended complaint satisfy the revenue prong required for enterprise coverage. The second amended complaint alleges that over nine full-time administrative staff worked for this home health care company, in addition to home health care providers; that Appellants worked a substantial amount of hours; that the Department of Labor had recovered hundreds of thousands of dollars on behalf of the providers; and that "on information and belief" Amazing has "annual gross volume of sales made or business done in excess of $500,000.00."

A plaintiff may plead upon "information and belief" when the facts alleged "are peculiarly in the possession of an opposing party," provided that the plaintiff has "exercise[d] reasonable due diligence and provide[d] some factual basis for his allegations that would 'raise a reasonable expectation that

discovery will reveal evidence' that defendants engaged in unlawful conduct." *Clark v. Thompson*, 850 F. App'x 203, 209 (5th Cir. 2021) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (citing *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018)). Here, the business volume of Amazing Grace is solely within its possession, but the sheer amount of hours that Amazing Grace's employees worked, in an industry like the healthcare industry, provide a plausible basis for the revenue allegation. Therefore, these allegations, when taken together, give rise to a plausible inference that Amazing Grace meets the $500,000.00 revenue threshold.

As the allegations in the second amended complaint give rise to enterprise coverage, that leads us to the question of whether the district court abused its discretion in denying Appellants leave to amend. The answer is yes.

The district court denied Appellants' motion for leave to amend because it determined that allowing amendment would be futile, result in undue delay, and reward repeated failure by Appellants to cure previous deficiencies. As mentioned, allowing the amendment would not be futile. Further, "delay alone is an insufficient basis for denial of leave to amend: the delay must be *undue*, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayequx v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). In this circumstance, Appellants' second request to amend their complaint might have caused some degree of delay, but it was not undue. Very little time had passed between Appellees' first appearance in this case and Appellants' request to file a second amended complaint: approximately four months. It is also notable that Appellees' first appearance in this case was delayed past the time allowed by the Federal Rules of Civil Procedure, yet the district court excused Appellees' untimeliness. Further, the court would not have been burdened by allowing

amendment because it could have considered the amendment in conjunction with Appellees' motion to dismiss, as district courts often do. Appellees also had the opportunity to respond to the new allegations in the second amended complaint via their reply brief. Lastly, we disagree that Appellants "repeatedly" failed to cure the deficiencies in their complaint. The first motion to dismiss makes brief reference to the handling clause, but it is not robust. And this is not a situation where the district court ever pointed out the deficiencies in the complaint and allowed amendment. Most importantly, this is merely a *second* amended complaint: while the first amended complaint may have failed to cure the prior pleading deficiency, it was not a "repeated" failure.

We do not suggest that plaintiffs may amend their complaints without limit. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding a district court did not abuse its discretion in denying the plaintiff leave to file a third amended complaint, particularly because the plaintiff did not expressly request the opportunity, the district court previously granted leave for the exact reason for which the plaintiff sought leave to amend, and amendment would be futile). However, it is standard practice in the district court for a plaintiff to file a second amended complaint this early in litigation. Accordingly, the district court abused its discretion in denying Appellants leave to amend.

## CONCLUSION

The second amended complaint sufficiently alleges that Amazing Grace falls within FLSA enterprise coverage, and it was an abuse of discretion for the district court to deny Appellants leave to file their second amended complaint. Therefore, we REVERSE and REMAND.